GENERAL COMMITTEE OF ADJUSTMENT OF THE BROTHERHOOD OF LOCOMOTIVE ENGINEERS FOR THE PACIFIC LINES OF SOUTHERN PACIFIC CO. *v.* SOUTHERN PACIFIC CO. ET AL.

NO. 27.

Argued October 14, 15, 1943.—Decided November 22, 1943.

*Messrs. Clarence E. Weisell* and *George M. Naus,* with whom *Mr. Harold N. McLaughlin* was on the briefs, for the General Committee of Adjustment of the Brotherhood of Locomotive Engineers, petitioner in No. 27 and respondent in No. 41; *Mr. Donald R. Richberg,* with whom *Messrs. Felix T. Smith* and *Francis R. Kirkham* were on the brief, for the General Grievance Committee of the Brotherhood of Locomotive Firemen and Enginemen, petitioner in No. 41 and respondent in No. 27.

*Mr. Burton Mason,* with whom *Messrs. C. W. Durbrow* and *Henley C. Booth* were on the brief, for the Southern Pacific Co., respondent in Nos. 27 and 41.

*Solicitor General Fahy* and *Mr. Robert L. Stern* filed a brief on behalf of the United States, as *amicus curiae,* urging affirmance.

Mr. Justice Douglas delivered the opinion of the Court.

These are companion cases to *General Committee of Adjustment* v. *Missouri-Kansas-Texas R. Co., ante,* p. 323, and *Switchmen's Union* v. *National Mediation Board, ante,* p. 297. They are here on a petition and on a cross-petition for writs of certiorari to the Circuit Court of Appeals for the Ninth Circuit. No. 41, the cross-petition, involves a dispute between the collective bargaining representatives of the locomotive engineers and of the locomotive firemen on the Pacific lines of the Southern Pacific Co. The controversy involves the same basic question as is present in the *Missouri-Kansas-Texas R. Co.* case. The committee for the engineers (hereinafter called the Engineers) brought this action for a declaratory judgment that provisions of a June, 1939 agreement between the carrier and the committee for the firemen (hereinafter called the Firemen) concerning the demotion of engineers to firemen and the calling of firemen for service as emergency

engineers were invalid under the Railway Labor Act. The courts below undertook to resolve the controversy. See 132 F. 2d 194, 202–206. For the reasons stated in the *Missouri-Kansas-Texas R. Co.* case we think that the questions are not justiciable issues under the Railway Labor Act.

The question presented in No. 27 is related to the questions in the other two cases. In the suit brought by the Engineers (No. 41) a declaratory judgment was also asked that Article 51, § 1 of the collective bargaining agreement between the carrier and the Firemen was invalid under the Railway Labor Act. That section provides: "The right of any *engineer,* fireman, hostler or hostler helper to have the regularly constituted committee of his organization represent him in the handling of his grievances, in accordance with the laws of his organization and under the recognized interpretation of the General Committee making the schedule involved, is conceded."

The question whether the Engineers were the exclusive representatives of engineers in the handling of their individual grievances was the subject of dispute by the Engineers with this carrier and also with the Firemen. It was one of several subjects on which the Firemen had a strike ballot taken in 1937. Following the vote to strike, the President appointed an Emergency Board [1] under § 10 of the Act to investigate and report on this and other disputes. The Board reported in 1937. The dispute has continued to date.

The Engineers and the Firemen are the majority representatives of their respective crafts under the Act. The Engineers contend that the Firemen have no right to represent men working as engineers in the handling of individual grievances involving an interpretation of the collective bargaining agreement which the Engineers ne-

---

[1] The Board was appointed April 14, 1937, and was composed of G. Stanleigh Arnold, Charles Kerr, and Dexter M. Keezer.

gotiated. Their position is that under the Act they are the exclusive representative of the individual engineer in that class of disputes which he has with the carrier as well as the exclusive representative of the craft for purposes of collective bargaining. The District Court refused to declare that the inclusion of the word "engineer" in Article 51, Sec. 1 of the agreement was unlawful under the Act. The Circuit Court of Appeals affirmed that judgment. 132 F. 2d 194–202.

The Engineers place their chief reliance on those provisions of § 2, Fourth which state: (1) that employees "shall have the right to organize and bargain collectively through representatives of their own choosing"; and (2) that the "majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this Act." And it is pointed out that by reason of § 2, Eighth the provisions of § 2, Fourth become a part of each contract of employment. Some support is also sought from § 2, Second and Sixth. The former provides that "all disputes" between a carrier and its employees shall be considered in conference between representatives of the parties. The latter provision says that in case of a dispute as to grievances "it shall be the duty of the designated representative" of the carrier and of the employees to specify a time and place for a conference. From these provisions it is argued that the collective bargaining representative of a craft becomes the exclusive representative for all purposes of the Act— the protection of the individual's as well as the craft's interests. On the other hand, the carrier and the Firemen contend that the Act limits the exclusive representation of the collective bargaining agent to the interests of the craft. They contend that this is the true meaning of § 2, Fourth. They also rely on § 3, First (i) which states that prior to a reference of disputes between employees and carriers to the Adjustment Board they "shall be handled

in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes." They claim that "usual manner" means the prior practice and that that shows a uniform acceptance of the right of the aggrieved employee to select his own representative. They point out that § 2, Third and Fourth prohibit the carrier from influencing employees in their choice of representatives. The argument is that a contract by the carrier with the Engineers giving the latter the exclusive right to represent engineers in the presentation of their individual claims would in effect coerce all Engineers into joining that union in violation of § 2, Third and Fourth.

The parties base their respective arguments not only on the language of the Act and its legislative history but also on various trade union practices and analogous problems arising under the National Labor Relations Act. From these various materials each seeks to prove that Congress has fashioned a federal rule (enforcible in the courts) concerning the authority of collective bargaining agents to represent various classes of employees on their individual grievances.[2] All of these would be relevant data for con-

---

[2] Reference is also made to certain informal rulings by the National Mediation Board that the individual employee has the right under the Act to select his own representative in such a case. And considerable stress is given to the following statement of the Emergency Board, *supra* note 1, appointed in 1937:

"This legislation was enacted for the purpose of protecting national transportation against the consequences of labor disputes between carriers and their employees. It was devised by representatives of management, the employees, and the public. It secured the benefits of unhampered collective bargaining to the several crafts or classes engaged in the work of railway transportation. When a craft or class, through representatives chosen by a majority, negotiates a contract with a carrier, all members of the craft or class share in the rights secured by the contract, regardless of their affiliations with any organization of employees. It is clearly provided that these rights may be protected by negotiation or by the several methods of adjustment

struction of the Act if the courts had been entrusted with the task of resolving this type of controversy. But we do not think they were.

We have here no question involving the representation of individual employees before the National Railroad Adjustment Board.[3] We are concerned only with a problem of representation of employees before the carriers on certain types of grievances[4] which, though affecting individuals, present a dispute like the one at issue in the *Missouri-Kansas-Texas R. Co.* case. It involves, that is to say, a jurisdictional controversy between two unions. It raises the question whether one collective bargaining agent or the other is the proper representative for the presentation of certain claims to the employer. It involves a determination of the point where the exclusive jurisdiction of one craft ends and where the authority of another craft begins. For the reasons stated in our opinions in the *Missouri-Kansas-Texas R. Co.* case and in the

established by the Act. It is true that the representatives of the majority represent the whole craft or class in the *making* of an agreement for the benefit of all, but it is equally true that nothing in the Act denies the right to any employee, or group of employees, to enforce through representatives of his or their own choosing, his or their rights under any such agreement. The whole spirit and intention of the Act is contrary to the use of any coercion or influence against the exercise of an individual's liberty in his choice of representatives in protecting his individual rights secured by law or contract."

[3] The Act provides for proceedings before the Adjustment Board in disputes growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules or working conditions. § 3, First (i). In such cases the parties "may be heard either in person, by counsel, or by other representatives, as they may respectively elect." § 3, First (j).

[4] These do not include personal injury claims and the like. They embrace claims which though strictly personal arise out of and involve an interpretation of the collective bargaining agreement which the Engineers negotiated and under which the individual engineer is working.

344

*Switchmen's* case, we believe that Congress left the so-called jurisdictional controversies between unions to agencies or tribunals other than the courts. We see no reason for differentiating this jurisdictional dispute from the others. Whether different considerations would be applicable in case an employee were asserting that the Act gave him the privilege of choosing his own representative for the prosecution of his claims is not before us.

*Reversed.*

MR. JUSTICE JACKSON concurs in the result.

MR. JUSTICE ROBERTS and MR. JUSTICE REED are of the view that the Court should entertain jurisdiction of the present controversies for the reasons set out in the dissent in *Switchmen's Union* v. *National Mediation Board, ante,* p. 307.