**UNITED TRANSPORT SERVICE EM-PLOYEES OF AMERICA, CIO, ex rel. WASHINGTON et al. v. NATIONAL ME-DIATION BOARD et al.**

No. 10010.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 16, 1948.

Decided Oct. 17, 1949.

Mr. William D. McFarlane, Special Assistant to the Attorney General, with whom Mr. Herbert A. Bergson, Assistant Attorney General, Mr. Edward Dumbauld, Special Assistant to the Attorney General, and Mr. George Morris Fay, United States Attorney, were on the brief, for appellee National Mediation Board.

Mr. Willard H. McEwen, Toledo, Ohio, with whom Mr. Clarence M. Mulholland, Toledo, Ohio, who entered an appearance, was on the brief, for appellees Brotherhood of Railway & Steamship Clerks, Freight Handlers, Express & Station Employees, International Association of Machinists. Mr. Linton M. Collins and Mr. H. Donald Kistler, Washington, D. C., also entered appearances for appellees Brotherhood of Railway & Steamship Clerks, Freight Handlers, Express & Station Employees, International Association of Machinists.

Mr. Robert B. Hankins, Washington, D. C., entered an appearance for appellee Pennsylvania Central Airlines Corp.

Before STEPHENS, Chief Judge, and WILBUR K. MILLER and PROCTOR, Circuit Judges.

STEPHENS, Chief Judge.

The appellants, plaintiffs below, are the United Transport Service Employees of America, CIO, hereafter sometimes referred to as United, or as one of the plaintiffs, and James A. Washington and James E. Edmonds in their own behalf and on behalf of others alleged to be similarly situated, to wit, Negro janitor employees of Pennsylvania Central Airlines Corporation. The appellants James A. Washington and James E. Edmonds are sometimes hereafter referred to as the individual plaintiffs. The appellees, defendants below, are the National Mediation Board; the Pennsylvania Central Airlines Corporation; the Brotherhood of Railway & Steamship Clerks, Freight Handlers, Express & Station Employees; and the International Association of Machinists. The appellees are sometimes hereafter referred to respectively as the Board, Pennsylvania, Brotherhood, and Machinists, or as the defendants.

Mr. James A. Cobb, Washington, D. C., with whom Mr. George E. C. Hayes, Washington, D. C., who entered an appearance, was on the brief, for appellants.

The appeal is from a summary judgment entered by the District Court of the United States for the District of Columbia (now the United States District Court for the District of Columbia) against the appellants on motions of the appellees. The District Court filed no opinion but was apparently of the view that there was no genuine issue of material fact between the parties and that as a matter of law, on the undisputed facts, the appellees were entitled to judgment. In addition to the motions for summary judgment, there were two motions to dismiss the appellants' complaint, each of them upon the grounds that the District Court had no jurisdiction to entertain the action and that the complaint stated no cause of action. One of these motions was filed by the Board alone, the other by the Brotherhood and the Machinists jointly. Pennsylvania filed an answer in which as a first defense it asserted that the appellants' complaint stated no cause of action against Pennsylvania. This first defense was in effect a motion to dismiss the complaint, Rule 12(b) Federal Rules of Civil Procedure, 28 U.S.C.A., and it is hereafter referred to as such. In a second and third defense Pennsylvania admitted some of the allegations of the complaint, asserted that it was without information sufficient to form a belief as to the truth of certain others, and alleged that it had acted in full compliance with the law as administered by the Board. The District Court did not act upon the motions to dismiss and it also took no action upon the issues joined by the complaint and the assertions of Pennsylvania—in respect of certain of the allegations of the complaint—that Pennsylvania was without information sufficient to form a belief in respect thereof.

For reasons which will appear below we think that the motions to dismiss should have been granted and that the District Court ought not to have ruled upon the motions for summary judgment. We think also that this court should consider only the motions to dismiss and not rule upon the question of the correctness of the summary judgment.

Stated in summary form, the allegations of the appellants' complaint were that:

On July 17, 1945, a collective bargaining agreement was entered into between Pennsylvania and its janitor employees as represented by United, their bargaining agent. This agreement was filed with the Board and tended to show that the janitor employees of Pennsylvania had unanimously voted for United as their bargaining agent. The Board had, by certification or through knowledge of executed agreements with fifty railroads and air-line companies, "accepted and recognized" the qualifications of United as a craft or class organization representing redcaps, dining car waiters, Pullman and laundry workers on railroads, and redcaps, janitors, and porters on airlines. On January 31, 1947, the Board, without regard to the contract of July 17, 1945, and without notice to United or to the individual plaintiffs, made a new determination of craft or class. This determination violated and rendered ineffective the agreement of July 17, 1945, and, without their consent, relegated the individual plaintiffs to representation by the Brotherhood and the Machinists, membership in which was denied the individual plaintiffs solely because of color, and in which organizations the individual plaintiffs had no voice. By the terms of the craft or class determination of January 31, 1947, Pennsylvania is forced, for purposes of collective bargaining representation, to divide its employees between the Brotherhood and the Machinists and to refuse to recognize the terms of the bargaining agreement of July 17, 1945, and is compelled to look to the Brotherhood and the Machinists as bargaining agents for the individual Negro janitor plaintiffs and those of like situation for whom such individual plaintiffs sue.

The action of the Board as described above "in its representative capacity under authority of the Government" was in violation of "the contract clause" of the Constitution, was an abridgement of the privileges and immunities of the individual plaintiffs as citizens of the United States, and was a denial to the individual plaintiffs of due process of law and of the equal protection of the laws, as guaranteed by the Fifth and Fourteenth Amendments to the Constitution.

The appellants prayed that the District Court require all of the defendants to answer; that the Board be required *pendente lite* and permanently to set aside so much of its determination of January 31, 1947, as purported to designate the Brotherhood and/or the Machinists as bargaining agents for the individual plaintiffs; that upon final hearing of the cause the court require the reinstatement of the agreement of July 17, 1945, between United and Pennsylvania; that the court enjoin the Brotherhood and

the Machinists from exercising any jurisdiction over the individual plaintiffs and from attempting to act as bargaining agents for them; and that such other relief as might be required be granted.

The appellants invoked in their complaint, in addition to the provisions of the Constitution above referred to, 28 U.S.C. § 41(8) (1946), which gives the United States district courts "original jurisdiction" of all "suits and proceedings arising under any law regulating commerce," [1] and invoked also the Railway Labor Act, Act of May 20, 1926, 44 Stat. 577, as amended by Act of June 7, 1934, 48 Stat. 926; Act of June 21, 1934, 48 Stat. 1185; Act of June 25, 1936, 49 Stat. 1921; and Act of Aug. 13, 1940, 54 Stat. 785, 786; 45 U.S.C. §§ 151–188 (1946).

The Railway Labor Act in Section 2 Fourth (45 U.S.C. § 152 Fourth (1946)) provides:

Employees shall have the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this Act.

· · ·

The right thus conferred is protected by Section 2 Ninth of the Act (45 U.S.C. § 152 Ninth (1946)), which reads as follows:

If any dispute shall arise among a carrier's employees as to who are the representatives of such employees designated and authorized in accordance with the requirements of this Act, it shall be the duty of the Mediation Board, upon request of either party to the dispute, to investigate such dispute and to certify to both parties, in writing, within thirty days after the receipt of the invocation of its services, the name or names of the individuals or organizations that have been designated and authorized to represent the employees involved in the dispute, and certify the same to the carrier. Upon receipt of such certification the carrier shall treat with the representative so certified as the representative of the craft or class for the purposes of this Act. In such an investigation, the Mediation Board shall be authorized to take a secret ballot of the employees involved, or to utilize any other appropriate method of ascertaining the names of their duly designated and authorized representatives in such manner as shall insure the choice of representatives by the employees without interference, influence, or coercion exercised by the carrier. In the conduct of any election for the purposes herein indicated the Board shall designate who may participate in the election and establish the rules to govern the election, or may appoint a committee of three neutral persons who after hearing shall within ten days designate the employees who may participate in the election. The Board shall have access to and have power to make copies of the books and records of the carriers to obtain and utilize such information as may be deemed necessary by it to carry out the purposes and provisions of this paragraph.

Necessarily incidental to the power of the Board under Section 2 Ninth to resolve controversies concerning the right, conferred under Section 2 Fourth, of the majority of any craft or class of employees to determine who shall be the representative of the craft or class for the purposes of the Act, is determination by the Board of what is the appropriate craft or class in which an election shall be held. Switchmen's Union v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943).

By their complaint the appellant sought judicial review of the Board's determination of craft or class as alleged on January 31, 1947. Such determination was, as pointed out above, an incident of the Board's certification power under Section 2 Ninth of the Railway Labor Act. In the Switchmen's Union case above cited, the Supreme Court held that Congress has given to the Board exclusive and final jurisdiction over proceedings under Section 2 Ninth and has provided, apart from constitutional questions, no method of review of the Board's action, that its action under Section 2 Ninth is conclusive upon the parties without right of review in any court. In that case a dispute had arisen between the Switchmen's Union of North America and the Brotherhood of Railroad Trainmen as to representation for collective bargaining of yardmen employees of the New

1. The present statute, 28 U.S.C. § 1337 (1948), provides: "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

York Central Railroad Company's system. The Brotherhood sought to be the representative of all yardmen. The Switchmen's Union contended that yardmen of certain designated parts of the system should be permitted to vote for separate representatives instead of being compelled to take part in a system-wide election. The Board directed an election, designating all yardmen as participants. At the election the Brotherhood was chosen collective bargaining representative and the Board certified this result to the railroads concerned. The Switchmen's Union and some of its members then brought suit in the District Court of the United States for the District of Columbia challenging the determination by the Board of the participants in the election, i. e., challenging the Board's craft or class determination, and seeking to have the certification of the Brotherhood cancelled. The District Court upheld the decision of the Board that all yardmen in the service of the carriers should select a single representative for collective bargaining and upheld the Board's certification of the Brotherhood. We affirmed this ruling. (77 U.S. App.D.C. 264, 135 F.2d 785 (1943)). The Supreme Court granted certiorari. It held that the merits of the controversy were not before it for the reason that the District Court did not have the power to review the action of the Board in issuing the certificate. The Court said:

...The Act in § 2, Fourth writes into law the "right" of the "majority of any craft or class of employees" to "determine who shall be the representative of the craft or class for the purposes of this Act." That "right" is protected by § 2, Ninth which gives the Mediation Board the power to resolve controversies concerning it and as an incident thereto to determine what is the appropriate craft or class in which the election should be held. See *Brotherhood of Railroad Trainmen* v. *National Mediation Board*, [66 App.D.C. 375] 88 F.2d 757; *Brotherhood of Railroad Trainmen* v. *National Mediation Board*, [77 U.S.App.D.C. 259] 135 F.2d 780. A review by the federal district courts of the Board's determination is not necessary to preserve or protect that "right" Congress for reasons of its own decided upon the method for the protection of the "right" which it created. It selected the precise machinery and fashioned the tool which it deemed suited to that end. Whether the imposition of judicial review on top of the Mediation Board's administrative determination would strengthen that protection is a considerable question. All constitutional questions aside, it is for Congress to determine how the rights which it creates shall be enforced. ... [320 U.S. at 300–301, 64 S.Ct. at 97]

The Supreme Court ruled similarly in General Committee v. Missouri-Kansas-Texas R. Co., 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76 (1943), and again in General Committee v. Southern Pacific Co., 320 U.S. 338, 64 S.Ct. 142, 88 L.Ed. 85 (1943). Those two cases and the Switchmen's Union case were companion cases decided the same day. The decision of the Supreme Court in the Switchmen's Union case has been followed by this court in Order of Railway Conductors v. National Mediation Board, 79 U.S. App.D.C. 1, 141 F.2d 366 (1944); United Transport Service Employees v. National Mediation Board, 79 U.S.App.D.C. 15, 141 F.2d 724 (1944); National Federation v. National Mediation Board, 79 U.S.App.D. C. 16, 141 F.2d 725 (1944). It will be noted that in the Switchmen's Union case judicial review was sought of both the craft or class determination of the Board and its certification of the collective bargaining representative selected in the election. In the instant case judicial review is sought of the craft or class determination alone. There is no allegation in the appellants' complaint that any election was held or that any certification was made by the Board. But *a fortiori* if the district courts have no jurisdiction to review both a determination of craft or class and a certification, as in the Switchmen's Union case, they have no jurisdiction to review a craft or class determination alone.

It is contended by the appellants that the Switchmen's Union case has been overruled by the decisions of the Supreme Court in Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), and Tunstall v. Brotherhood, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944). This is incorrect. In the Steele case the question was whether the Railway Labor Act imposed upon a labor organization, acting by authority of the statute as the exclusive bargaining representative of a craft or class of railway employees, the duty to represent all of the employees in the craft or class

without discrimination because of their race, and if so, whether the courts had jurisdiction to protect the minority of the craft or class from the violation of such an obligation. The issue arose upon a demurrer to a substituted amended bill of complaint filed in the Alabama circuit court by a Negro fireman. He alleged that the Brotherhood of Locomotive Firemen and Enginemen, the duly selected and authorized collective bargaining representative of all of the firemen, both white and colored, of the Louisville & Nashville Railroad, the plaintiff's employer, had entered into collective bargaining agreements with the Railroad, under the terms of which the Negro firemen were discriminated against in that they were deprived of the opportunity to work on jobs to which they were otherwise entitled by seniority. He prayed, among other things, for an injunction against enforcement of the agreements; and against the Brotherhood's and its agents' purporting to act as representative of the complainant and others similarly situated so long as the discrimination continued.[2] In the circuit court the demurrer to the substituted amended bill of complaint was sustained. The Supreme Court of Alabama affirmed. On certiorari to the Supreme Court, these rulings were reversed. The Supreme Court held, in view of the provisions of the Railway Labor Act, that a labor organization chosen to be the representative of a craft or class of employees must represent all of the members of the craft or class regardless of their union affiliations or want of them. The Court said:

So long as a labor union assumes to act as the statutory representative of a craft, it cannot rightly refuse to perform the duty, which is inseparable from the power of representation conferred upon it, to represent the entire membership of the craft. While the statute does not deny to such a bargaining labor organization the right to determine eligibility to its membership, it does require the union, in collective bargaining and in making contracts with the carrier, to represent non-union or minority union members of the craft without hostile discrimination, fairly, impartially, and in good faith. ... [323 U.S. at 204, 65 S. Ct. at 233]

The Court held that the courts have jurisdiction to protect the minority of a craft or class against violation of the obligation of the statutory representative to represent the entire membership of the craft or class. But in so holding it clearly differentiated judicial review of the administrative action of the Board in determinations of craft or class and certifications of a collective bargaining representative. On the subject of judicial review, the Court said:

Since the right asserted by petitioner "is . . . claimed under the Constitution" and a "statute of the United States," the decision of the Alabama court, adverse to that contention is reviewable here under § 237 (b) of the Judicial Code, unless the Railway Labor Act itself has excluded petitioner's claims from judicial consideration. The question here presented is not one of a jurisdictional dispute, determinable under the administrative scheme set up by the Act, cf. *Switchmen's Union* v. *National Mediation Board*, 320 U.S. 297 [64 S.Ct. 95, 88 L.Ed. 61]; *General Committee* v. *M.-K.-T. R. Co.*, 320 U.S. 323 [64 S.Ct. 146, 88 L.Ed. 76]; *General Committee* v. *Southern Pacific Co.*, 320 U.S. 338 [64 S.Ct. 142, 88 L. Ed. 85]; *Brotherhood of Clerks* v. *United Transport Service Employees*, 320 U.S. 715, 816 [64 S.Ct. 260, 88 L.Ed. 420], or restricted by the Act to voluntary settlement by recourse to the traditional implements of mediation, conciliation and arbitration. *General Committee* v. *M.-K.-T. R. Co.*, supra, 332, 337 [64 S.Ct. 150, 153]. *There is no question here of who is entitled to represent the craft, or who are members of it, issues which have been relegated for settlement to the Mediation Board, Switchmen's Union* v. *National Mediation Board, supra; General Committee* v. *M.-K.-T. R. Co., supra.* . . . [Italics supplied] [323 U.S. at 204–205, 65 S.Ct. at 233]

2. Specifically, according to the opinion of the Supreme Court, the bill of complaint asked "for discovery of the manner in which the agreements have been applied and in other respects; for an injunction against enforcement of the agreements made between the Railroad and the Brotherhood; for an injunction against the Brotherhood and its agents from purporting to act as representative of petitioner and others similarly situated under the Railway Labor Act, so long as the discrimination continues, and so long as it refuses to give them notice and hearing with respect to proposals affecting their interests; for a declaratory judgment as to their rights; and for an award of damages against the Brotherhood for its wrongful conduct." (323 U. S. at 197, 65 S.Ct. at 229)

Thus the Steele case, rather than overruling the Switchmen's Union case, recognizes and confirms the decision therein. The ruling in the Tunstall case parallels that in the Steele case.

Constitutional questions aside, therefore, the motions to dismiss on the ground of lack of jurisdiction of the District Court to entertain the action of the appellants should have been granted.

■ In view, however, of the reservation of the Supreme Court in the Switchmen's Union case in respect of constitutional questions, it is necessary to decide whether or not the allegations of the appellants' complaint stated a cause of action for invasion of their constitutional rights. Under the motions to dismiss made upon the ground of no cause of action stated, we assume, under the usual rule, that the well pleaded allegations of the complaint are true. We think that the allegations did not state a cause of action.

■ The allegation in the complaint that the Board's determination of craft or class on January 31, 1947, rendered ineffective the collective bargaining agreement of July 17, 1945, and compelled Pennsylvania to refuse to recognize the terms of that agreement and to look to the Brotherhood and the Machinists as bargaining agents for the individual Negro janitor plaintiffs and those of like situation for whom they sued, and therefore violated the contract clause of the Constitution, is an allegation of fact which is impossible in law. Such an allegation is not admitted by a demurrer asserting that no cause of action is stated in a complaint. Louisville & Nashville R. R. Co. v. Palmes, 109 U.S. 244, 3 S.Ct. 193, 27 L.Ed. 922 (1883). A motion to dismiss for "failure to state a claim upon which relief can be granted" is the modern equivalent of a demurrer. Rule 12(b), Federal Rules of Civil Procedure, as amended, and the Note thereto. Under Section 2 Ninth of the Railway Labor Act a determination of craft or class has no effect to alter collective bargaining arrangements. An alteration of such arrangements can result, under the Act, only from an election, or

other appropriate choice, of collective bargaining representatives, and a certification. The statute provides that if any dispute shall arise among a carrier's employees as to who are their representatives designated and authorized in accordance with the requirements of the Act, the Board shall within thirty days after the receipt of the invocation of its services certify to the carrier the name or names of the individuals or organizations that have been designated and authorized to represent the employees involved in the dispute. And the statute says: "Upon receipt of such certification the carrier shall treat with the representative so certified as the representative of the craft or class for the purposes of this Act." Moreover, the "contract clause" of the Constitution relates to state action only. It provides: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts. . . ." Article I, Section 10, Clause 1. The craft or class determination of the Board was not the act of a state. Perry v. United States, 294 U.S. 330, 55 S. Ct. 432, 79 L.Ed. 912, 95 A.L.R. 1335 (1935), and the In re Sinking-Fund Cases, 99 U.S. 700, 25 L.Ed. 496, 504 (1878), are relied upon by the appellants as supporting their contention that the Board's craft or class determination constituted an unconstitutional impairment of the obligation of the agreement of July 17, 1945. Those cases are not in point. They are not decided under the contract clause of the Constitution and they do not involve a private contract such as the collective bargaining agreement of July 17, 1945, between Pennsylvania and its janitor employees as represented by United. The Perry case holds that a Congressional Joint Resolution overriding an obligation created by a Government bond is unconstitutional. The Sinking-Fund Cases hold that a congressional statute altering the obligation of a railroad company under a charter theretofore granted by Congress did not constitute an unconstitutional interference with vested rights for the reason that the chartering statutes evidenced an intention that they would from time to time be amended.

■ The charge in the complaint that the Board's craft or class determination of

January 31, 1947, was made without notice to United or to the individual plaintiffs and therefore violated the due process clause of the Fifth and Fourteenth Amendments is not supportable. The Fourteenth Amendment applies to state action only. The Fifth Amendment applies to action of the Federal Government, but the craft or class determination of the Board, as a governmental agency, has, as said above, no effect to alter collective bargaining arrangements. It is but an administrative and preliminary incident to the power of the Board to resolve controversies concerning the right of employees to determine who shall be their collective bargaining representative. Congress must have had this in mind in omitting in the Railway Labor Act to provide for notice and hearing before Board action. As said in the Switchmen's Union case: "While the Mediation Board is given specified powers in the conduct of elections, there is no requirement as to hearings. And there is no express grant of subpoena power. The Mediation Board makes no 'order' and its only ultimate finding of fact is the certificate." (320 U.S. at 304, 64 S. Ct. at 98) The Fifth Amendment provides that "No person shall ... be deprived of... property, without due process of law," and due process requires notice and hearing. But since the Board could not by a mere craft or class determination occasion a deprivation of the appellants' property, i. e., of contract rights, no notice of intention to make such a determination was constitutionally necessary.

The charge in the complaint that the Board's craft or class determination of January 31, 1947, relegated the individual plaintiffs, without their consent, to representation by the Brotherhood and the Machinists, in which organizations membership and voice were denied them solely because of color, and therefore abridged the privileges and immunities of the individual plaintiffs as citizens of the United States and denied them due process of law and equal protection of the laws, as guaranteed by the Fifth and Fourteenth Amendments, is also not supportable. The guarantees of the Fourteenth Amendment, as said above, apply to state action only; the limitations of the Fifth Amendment, to action of the Federal Government. While the action of the Board in its craft or class determination may be treated as governmental action, again such determination of the Board without more could have, under the Railway Labor Act, as is pointed out above, no effect to alter the collective bargaining arrangements of the individual plaintiffs. If, as alleged in the complaint, they were relegated to representation by the Brotherhood and the Machinists, in which membership and voice were denied them solely because of color, this must have been as the result of an election, or other appropriate choice, by virtue of which the majority of the craft or class, including the individual plaintiffs, as determined by the Board, chose those organizations as collective bargaining representatives of the craft or class as a whole. The complaint contains no allegation that any such election was held, or other appropriate choice made. Had the complaint alleged such an election or choice, it might have raised a question as to the constitutionality of the whole of Section 2 Ninth of the Railway Labor Act as applied to majority action of a craft or class resulting in representation of the whole thereof by an organization in which a colored minority of the craft or class were not permitted to be members or to have voice. Upon such a constitutional question we express no opinion, since it is not before us under the complaint as drawn.

We conclude that the complaint stated no cause of action for invasion of constitutional rights of the appellants.

 Since, for the reasons set forth above, the District Court had no jurisdiction, constitutional questions aside, to review the action of the Board, and since the complaint stated no cause of action for violation of constitutional rights of the appellants, the court should have granted the motions to dismiss and omitted to pass upon the motions for summary judgment. Where a complaint fails to state a claim upon which relief can be granted, a motion to dismiss it on such ground should be acted

upon and granted. A defendant should not be put to the trouble and expense of any further proceeding, and the time of the court should not be occupied with any further proceeding, under such a complaint. And, constitutional questions aside, for the court to pass upon the motions for summary judgment was for the court to exercise a jurisdiction to review the action of the Board which, under the authorities above cited, it did not possess.

The judgment appealed from is reversed and the case is remanded to the District Court with directions to grant the motions to dismiss.

Reversed and remanded with directions.