**SWITCHMEN'S UNION OF NORTH AMERICA, Plaintiff,**

v.

**CENTRAL OF GEORGIA RAILWAY COMPANY, Order of Railway Conductors & Brakemen and Brotherhood of Railroad Trainmen, Defendants.**

Civ. A. No. 1507.

United States District Court
M. D. Georgia,
Macon Division.

Nov. 4, 1958.

Benning M. Grice, Macon, Ga., for plaintiff.

Ralph L. Crawford, John R. Calhoun, Julian C. Sipple, Savannah, Ga., for defendants.

BOOTLE, District Judge.

This action arises as a result of the refusal of Central of Georgia Railway Company (herein called the Railroad) to place in effect a collective bargaining agreement between it and the Switchmen's Union of North America (herein called SUNA) made and entered into on March 14, 1958, to become effective April 5, 1958. Originally, this suit was an action by SUNA against the Railroad to enjoin deferment by the Railroad of the execution of that collective bargaining agreement. Inasmuch as the action was originally brought in the United States District Court for the Southern District of Georgia, Savannah Division, and the Brotherhood of Railroad Trainmen and Order of Railway Conductors & Brakemen (herein called BRT and ORC&B, respectively) have intervened as parties defendant, a résumé of the history of this case and related litigation is pertinent at the outset.

Prior to the spring of 1956, BRT has been the bargaining agent for yard work in the Athens, Rome, Cedartown and Griffin, Georgia yards. In the spring of 1956, a certification election was held on the Railroad as a result of which BRT was displaced by SUNA as the bargaining representative for work in its yards. Following such certification SUNA undertook to act in its new capacity. SUNA gave notice to the Railroad of a proposed conference, and thereafter the Railroad served a Sec. 6, 45 U.S.C.A. § 156, notice on BRT and ORC&B thinking at the time that BRT and ORC&B were entitled to notice. Subsequently, this notice was withdrawn, and the Railroad has since been advised that notice to BRT and ORC&B is not required. The collective bargaining agreement between the Railroad and SUNA which resulted from that conference left in abeyance changes in some of the rules concerning work formerly negotiated for by BRT in the Athens, Rome, Cedartown and Griffin yards. This situation continued until early 1958 when SUNA and the Railroad again began negotiations concerning that work. These negotiations resulted in a collective bargaining agreement between SUNA and the Railroad on March 14, 1958 which provided that, effective April 5, 1958, seniority rosters would be established for foremen and switchmen (yardmen) at the aforenamed yards and that to be placed upon these seniority rosters railway employees would have to give up seniority in any other class or craft. Upon notification from the Railroad that the agreement of March 14, 1958 would be placed into effect BRT and ORC&B protested and asked that the application of that agreement be deferred until BRT and ORC&B could confer with the Railroad. Acting upon this protest, on March 21, 1958, the Railroad deferred the effective date of the March 14, 1958 agreement until it could discuss the matter with BRT and ORC&B. On March 26, 1958, SUNA filed a suit in the United States District Court for the Southern District of Georgia, Savannah Division, alleging its contract and its validity and praying that the Railroad be restrained from meeting with BRT and ORC&B to discuss the agreement between SUNA and the Railroad, that a preliminary and permanent injunction issue to the same effect, and that its contract be enforced by mandatory injunction. Contemporaneously with, but in ignorance of, SUNA's suit BRT and ORC&B, through certain of their members, instituted suit against certain individual switchmen in the Superior Court of Bibb County, Georgia, seeking to enjoin the execution of the March 14, 1958 agreement; a restraining order in favor of BRT and ORC&B was issued by that court. That suit was subsequently removed to this

court and later dismissed by plaintiffs. On May 20, 1958, BRT and ORC&B were allowed to intervene in SUNA's suit against the Railroad in the Southern District. On the same day that court ordered the cause transferred to this court. Also, on May 20, 1958, BRT and ORC&B filed an answer and a cross-action alleging that the March 14, 1958 agreement was illegal and praying that the Railroad and SUNA be temporarily restrained and permanently enjoined from execution thereof and further that the Railroad be required to specifically perform certain provisions of the contract between BRT and the Railroad which antedated the 1956 certification election and concerned the work covered by the March 14, 1958 agreement.

It must be noted also that on April 3, 1958 the United States District Court for the Southern District of Georgia granted a temporary restraining order and injunction which ordered the parties to remain in status quo and prohibited SUNA from striking or creating any work stoppage until April 21, 1958; on that date that order was continued until further court order.

Following these preliminaries a hearing was held in this court on motions to dismiss which had been filed by SUNA and BRT and ORC&B. The contentions raised by these motions are essentially those raised by the complete record; they are briefly:

(1) SUNA urges that its complaint frames a justiciable issue in that this court has jurisdiction to pass upon the validity of the March 14, 1958 agreement and enforce its provisions if valid and, conversely, that the counterclaim of BRT and ORC&B is non-justiciable because it alleges a jurisdictional dispute and involves the interpretation or application of a collective bargaining agreement which can be resolved only before an administrative agency set up by the National Railway Labor Act. 45 U.S.C.A. §§ 151–163.

(2) BRT and ORC&B urge that their counterclaim presents a justiciable issue because its old contracts are alleged to be in force and this court can pass upon their validity and enforce them and, conversely, that SUNA's complaint alleges a jurisdictional dispute and involves the interpretation or application of a collective bargaining agreement over which an administrative agency set up by the National Railway Labor Act, supra, has sole jurisdiction.

As to the issue of the validity of SUNA's March 14, 1958 agreement with the Railroad, BRT and ORC&B urge that it is invalid because the latter two unions were entitled to notice of and attendance at the conference which produced the agreement, and in the absence of such notice and attendance the agreement is invalid.

(3) The Railroad urges that it is in a difficult position between the two unions, and the solution of the problem in favor of either of them will be acceptable to it, but it believes the March 14, 1958 agreement is valid, and it is ready and willing in the absence of a court order to the contrary to execute it.

These motions were fully argued and capably briefed by all parties after which the court elected to reserve ruling thereon and hear all evidence in the case. A full hearing was had and upon the complete record—pleadings and evidence as set out hereinbefore and after—the court now issues this memorandum opinion which shall suffice as its findings of fact and conclusions of law.

The contentions of the parties frame three issues to be resolved:

(1) Does SUNA's petition present a justiciable issue?

(2) Were BRT and ORC&B entitled to notice as provided by Sec. 6 of the National Railway Labor Act? 45 U.S.C.A. § 156.

(3) Is injunctive relief available to any of the parties on any of the various theories urged by them?

██ Because this litigation involves a determination of the validity of the contract of March 14, 1958 between SUNA and the Railroad this court has jurisdiction. Brotherhood of Railroad Trainmen

v. Howard, 1951, 343 U.S. 768, 774, 72 S.Ct. 1022, 96 L.Ed. 1283; Brotherhood of Railroad Trainmen v. Smith, 6 Cir., 1958, 251 F.2d 282, 285.

BRT and ORC&B say that before the contract can be valid they must have had notice of and an opportunity to attend the negotiations producing the contract, and that if their rights in that regard are questioned any dispute on that point is not within the jurisdiction of this court but is within the purview of one of the administrative agencies set up by the National Railway Labor Act, supra. It may be noted that BRT and ORC&B argue further that in the absence of a valid contract resulting from negotiations, with respect to which they had notice and an opportunity to attend, the old agreements concerning yard work are in effect, and being valid—there being no contention that if such old agreements were not abrogated they are valid—this court can enforce the old agreements by proper judgment. Thus, if neither notice of nor attendance at the bargaining conference was required intervenors are entitled to no relief.

■ Of course, this argument poses at the outset the question as to the jurisdiction of this court to determine whether or not a jurisdictional dispute exists. This court sees this problem in the light in which the U. S. Court of Appeals for the Sixth Circuit saw a similar problem, and adopts its language:

"Decision of this issue depends upon the meaning of the statute and over such a question the federal courts have jurisdiction."

Brotherhood of Railroad Trainmen v. Smith, supra, 251 F.2d at page 285.

It appeared from the evidence that the representative of the National Mediation Board, who was present at the negotiations between SUNA and the Railroad which resulted in the March 14, 1958 agreement, rejected a suggestion by the Railroad that notice be given to BRT and ORC&B saying that SUNA was the certified bargaining agent and the only such agent entitled to notice. In this view the National Mediation Board concurred as indicated by the following four telegrams:

"March 5, 1958
"Mr. E. C. Thompson,
Executive Secretary,
National Mediation Board,
Washington 5, D. C.

"After examining copy of your wire to Mediator Warren S. Lane in which you quote your letter of February 20, 1956 to general manager and general chairman, B. R. T. on Spokane, Portland and Seattle Railway Co. it appears that the situation in which I find myself is identical. Did the B. R. T. retain the right to negotiate with the management concerning the exercise of road seniority by the men filling vacancies in yard jobs in both open and closed yards on the Central of Georgia Railway since yardmen are now represented by the SUNA as a result of certification R 3033.

"W. J. Collins,
Director of Personnel,
Central of Georgia
Railway Co."

"March 6, 1958
"W. J. Collins, Director of Personnel Central of Georgia Railway Co.
Savannah, Ga.

"Re Your telegram of March 5. We suggest you secure information requested direct from Mr. E. W. Showalter, Gen. Mgr. of Spokane, Portland & Seattle Railway Co.

"E. C. Thompson
Executive Secy.
National Mediation Board."

"Savannah, Ga.,
March 6, 1958
"E. C. Thompson,
Executive Secretary
National Mediation Board
Washington, D. C.

"My wire March 5 asks specifically, 'Did the B. R. T. retain the right to negotiate with the management concerning the exercise of road sen-

iority by the men filling vacancies in yard jobs in both open and closed yards on the Central of Georgia Railway since yardmen are now represented by the SUNA as a result of certification R 3033.'

"I do not understand why I should direct this to Mr. E. W. Showalter since he had nothing to do with the certification referred to under NMB R–3033. My question is a proper one directed to the National Mediation Board under provisions of the Railway Labor Act.

"W. J. Collins,
Dir. of Per.
Central of Georgia
Railway Co."

"March 6, 1958
"W. J. Collins, Director of Personnel
Central of Georgia Railway Co.
Savannah, Ga.

"Regret question contained in your telegram March 5, 1958, was misunderstood. This Board is of opinion that under law a carrier can deal with the representatives of each craft or class of employees on changes in rates of pay, rules, or working conditions for only the employees in that craft or class. By direction of the National Mediation Board.

"E. C. Thompson
Executive Secretary NMBO"

This court is in agreement with that position. The National Railway Labor Act provides in part:

"Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice * * *" 45 U.S.C.A. § 156.

While it is true that the BRT and ORC&B are interested in the outcome of negotiations surrounding yard work it is difficult to see how, after losing two certification elections (the second election was held during the pendency of this suit and was won by SUNA) to SUNA, they can claim to be the representative of an interested class within the meaning of the statute. Railway Employees' Co-op. Ass'n v. Atlanta B. & C. R. Co., D.C.N.D. Ga.1938, 22 F.Supp. 510, 514. The defendant unions claim to find some support in a case in which it was said:

"The statute thus recognizes, what is the practical truth, that no conference or agreement will end a dispute unless all who are really interested are represented. The most bitter and perhaps the most numerous industrial disputes have come to be those in which classes of employees dispute with their employer and one another over who has the right to control a particular matter; the so-called jurisdictional disputes. Regardless of who may be right or wrong, such a dispute can be settled justly only by a tri-partite agreement. This is true of the present dispute."

General Committee, etc. v. Missouri-K.-T. R. Co., 5 Cir., 1943, 132 F.2d 91, 94, reversed 1943, 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76.

The "present dispute" referred to in that case was over work which had been performed by two unions jointly and which in years preceding the dispute had been bargained for harmoniously by those two unions. Where, as here, only one union is certified to represent one class about one type of work, to allow the union which has been displaced by proper electoral processes to continue to enjoy rights at the bargaining table would be productive of what the Railroad in its brief calls a "chaotic condition." It is quite unthinkable that the loser of two certification elections can say, as BRT and ORC&B would say here, that all we lost was a right to negotiate and contract for working conditions, and we still re-

tain the right to furnish the yardmen to perform the work over which SUNA won the right of representation. This would be nothing more than a reluctance to admit defeat at the polling place and does not constitute a jurisdictional dispute as defined by the Supreme Court:

> "It involves, that is to say, a jurisdictional controversy between two unions. It raises the question whether one collective bargaining agent or the other is the proper representative for the presentation of certain claims to the employer."

General Committee, etc. v. Southern Pac. Co., 1943, 320 U.S. 338, 343, 64 S.Ct. 142, 145, 88 L.Ed. 85. BRT and ORC&B were not entitled to notice of or a seat at the bargaining conference which produced the agreement of March 14, 1958, and therefore cannot assert that that agreement is invalid. Since the March 14, 1958 agreement is valid it abrogates pre-existing contracts for yard work; BRT and ORC&B can neither attack that contract nor assert the validity of their own.

Absent an attack by the Railroad on the validity of the March 14, 1958 agreement this case must be resolved in favor of SUNA. The Railroad makes no such attack but on the contrary says that in the absence of a court order restraining it from doing so it will execute the contract.

In this posture the case leaves only the question of appropriate relief. This court does not reach the question whether it would be proper to issue the mandatory injunction sought were such relief necessary in order that SUNA enjoy the benefits of its agreement. This question is not reached because of the fact that SUNA and the Railroad see eye-to-eye as to the validity of the agreement, and the Railroad stands ready to execute it.

Whereupon, it is considered, ordered and adjudged:

(1) The contract of March 14, 1958 between Switchmen's Union of North America and the Central of Georgia Railway Company is valid and binding on both parties thereto.

(2) All of the prayers of intervenors, Brotherhood of Railroad Trainmen and Order of Railway Conductors and Brakemen, are denied.

(3) The restraining order of April 3, 1958, as continued on April 21, 1958, is hereby dissolved.

(4) The mandatory injunction sought by Switchmen's Union of North America is hereby denied on the ground that there is no necessity therefor.

(5) Costs to be taxed by the Clerk are hereby assessed against the intervenors, Brotherhood of Railroad Trainmen and Order of Railway Conductors and Brakemen.

(6) Jurisdiction of this cause is retained by this court for the entry of such further orders as might be or become proper and necessary.