**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Plaintiff,**

v.

**TEXAS INTERNATIONAL AIRLINES, INC. and New York Air Lines, Inc. and Texas Air Corp. Defendants.**

**No. 80 C 3009.**

United States District Court, E. D. New York.

Dec. 1, 1980.

Cohen, Weiss & Simon, New York City (Robert S. Savelson, New York City, of counsel), for plaintiff.

Hughes, Hubbard & Reed, New York City (John S. Allee, New York City, of counsel), Akin, Gump, Hauer & Feld, Washington, D. C. (John J. Gallagher, Laurence J. Hoffman, Michael J. Cozzilio, Washington, D. C., of counsel), for defendant Texas Air Corp.

Proskauer, Rose, Goetz & Mendelsohn, New York City (Marvin E. Frankel, Edward Silver, Saul G. Kramer, Howard L. Ganz, New York City, of counsel), for defendant New York Air Lines, Inc.

Baker & Botts, Houston, Tex. (L. Chapman Smith, Joseph R. Weeks, Houston, Tex., of counsel), for defendant Texas International Airlines, Inc.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff Air Line Pilots Association (ALPA) brought this action under the Railway Labor Act (the Act), 45 U.S.C. §§ 151 *et seq.*, seeking an injunction, a declaratory judgment, and damages. Defendants have moved to dismiss.

In substance, the complaint alleges the following. ALPA is the collective bargaining representative under the Act for more than 35,000 pilots of thirty United States air carriers, including defendant Texas International Airlines, Inc. (Texas International), which employs over 400 pilots and prior to some time in 1980 was directly controlled by Jet Capital Corp. During 1980 the principals of Jet Capital Corp., with a view to entering the New York market, organized defendant Texas Air Corp., of which defendants Texas International and a new corporation, New York Air Lines, Inc. (New York Air) became wholly owned subsidiaries. New York Air has applied to the Civil Aeronautics Board for a certificate to serve New York and Washington commencing December 14, 1980, and is employing pilots to fly that route.

ALPA contends that all this was done to deprive it of "its representative status and collective bargaining rights" and the Texas International pilots of their "employment rights" to fly the new routes pursuant to the collective bargaining agreement entered into between ALPA and Texas International. ALPA argues that defendants' acts constitute "interference, influence and coercion" directed against ALPA and the pilots it represents in violation of Section 2 of the Act, in particular of subsection Fourth, pro-

viding in pertinent part, that employees shall have the right to organize and bargain collectively "through representatives of their own choosing" and that "no carrier" shall deny or interfere with that right.

The complaint does not assert that the work of the Texas International pilots is to be terminated or curtailed. But ALPA urges that pilots it represents must fly the proposed New York Air routes and asks the court to order defendants immediately to "apply and implement the pilot collective bargaining agreement in effect between Texas International and ALPA to New York Air."

Defendants have moved pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for lack of jurisdiction over the subject matter and for failure to state a claim.

While ALPA maintains that defendants comprise one "carrier" within the meaning of the Act and have violated a statutory duty to bargain with a designated representative, defendants say that the alleged facts, as distinguished from the conclusions and perjoratives, show simply a "representation dispute" exclusively in the jurisdiction of the National Mediation Board (the Board), which alone is empowered to decide whether or not related corporations should be treated as a single "carrier" for purposes of representation.

Were there no real question as to whether ALPA is the legitimate representative of New York Air employees, this court would undertake to decide the extent of New York Air's duty to bargain. *International Association of Machinists v. Northeast Airlines, Inc.*, 536 F.2d 975, 977 (1st Cir.), *cert. denied*, 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 328 (1976). Section 2 subsection Fourth of the Act requires a carrier to bargain with the representative chosen by the majority of a craft or class of employees, and a federal court will require the carrier to comply. *Virginian Ry. Co. v. System Federation No. 40*, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937).

■ But where there are doubts as to who is the authentic representative Section 2 subsection Ninth of the Act remits the "dispute" to the Board, which is charged with the duty of investigating and certifying the representative. *General Committee v. Southern Pacific Co.*, 320 U.S. 338, 64 S.Ct. 142, 88 L.Ed. 85 (1943); *General Committee v. Missouri–Kansas–Texas R.R. Co.*, 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76 (1943); *Switchmen's Union v. National Mediation Board*, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943). The dispute need not arise between two rival representatives. It is enough that there is one claimant and employees who are or may be either hostile or merely indifferent. *Summit Airlines, Inc. v. Teamsters Local 295*, 628 F.2d 787, p. 795 n.4 (2d Cir. 1980).

■ The court must accept the facts alleged in the complaint as true. But the conclusory statements that defendants have violated a duty to bargain with ALPA as the representative of pilots employed by New York Air assume that Texas International and New York Air should be deemed one carrier. Yet they are admittedly separate corporations serving different areas and flying over different routes. Whether because of their relationship the two corporations should be treated as one and all the pilots included in the same bargaining unit is the very kind of question the courts have construed the Act to lodge with the Board and not the judiciary. *Switchmen's Union v. National Mediation Board, supra*, at 300–01, 303–05; *Ruby v. American Airlines, Inc.*, 323 F.2d 248, 253–54 (2d Cir. 1963), *cert. denied*, 376 U.S. 913, 84 S.Ct. 658, 11 L.Ed.2d 611 (1964). It is a question hardly unfamiliar to the Board, which has dealt with similar issues in cases of mergers, acquisitions, and the like. *See, e. g., Republic Airlines, Inc.*, 8 NMB No. 15 (October 14, 1980); *Ross Aviation, Inc.*, 5 NMB 145 (1972); *Donora Southern Railroad Co.*, 2 NMB 80 (1952); *San Antonio, Uvalde & Gulf Railroad*, 2 NMB 157 (1950).

To be sure, those who control Texas International are expanding into another territory not by acquiring or merging with an existing carrier but by forming a new entity. But the principle is the same. In each instance the court can merely inquire whether or not the identity of the proper representative is beyond doubt. Unless it is, the matter is for the Board, which has shown itself alert to prevent carriers from frustrating representation rights by artful corporate devices. *See Pan American USA*, 7 NMB 92 (1979).

Of course, this court might intervene to prohibit a carrier from simply terminating its operations in one location in order to reopen in another and thus to escape any necessity of dealing with the employees' chosen representative. *Cf. Textile Workers Union of America v. Darlington Manufacturing Co.*, 380 U.S. 263, 85 S.Ct. 994, 13 L.Ed.2d 827 (1965); *Ruby v. TACA International Airlines, S.A.*, 439 F.2d 1359 (5th Cir. 1971). But nothing of that sort is made out here. It is not claimed that the Texas International activities are being abandoned.

As soon as uncertainty as to the appropriate representative appears, as it does on the face of this complaint, the court should decline to proceed. *Ruby v. American Airlines, Inc., supra*, at 256–57. Should ALPA invoke the services of the Board it would be required by Section 2 subsection Ninth of the Act to certify the bargaining representative within thirty days. Had ALPA requested these services on October 29, 1980, the date the complaint was filed, the dispute would by now have been resolved.

The motion is granted and the complaint dismissed. So ordered.