## BROADY v. ILLINOIS CENT. R. CO.
### No. 48 C 28.

United States District Court,
N. D. Illinois, E. D.
Jan. 16, 1951.

Eugene Cotton, Chicago, Ill., for plaintiff.

John W. Freels, Herbert J. Deany, Chicago, Ill., for defendant.

SULLIVAN, District Judge.

This is a suit arising under the Railway Labor Act, 45 U.S.C.A. §§ 151–163.

The plaintiff entered the employ of defendant railroad as a dining car waiter in or about September, 1941. He remained in the employ of the defendant in that capacity until the month of September, 1947, at which time he was discharged by the defendant.

On or about September 17, 1947, he received from the superintendent of dining service of the defendant railroad a letter advising him that he was charged with violating certain general rules of the railroad and advising him further that an investigation into these charges would be held in the office of the superintendent of dining car service on September 23. The letter further advised plaintiff that "you are entitled to employee representation of your own choice."

Plaintiff appeared at the specified time and place for the hearing on the charges against him at which time he was accompanied by certain individuals whom he had designated as his representatives for purposes of the hearing.

Mr. Clifford J. Bueschel was in charge of the hearing and investigation on that day. The plaintiff advised Mr. Bueschel that he had designated the two individuals who accompanied him or any one of them to act as his representative in the course of the hearing to be conducted by Mr. Bueschel. Mr. Bueschel advised the plaintiff and his designated representatives that the plaintiff could be represented only by an employee of the defendant railroad. Mr. Bueschel further advised the plaintiff and the plaintiff's representatives that the hearing would not proceed unless and until the plaintiff's designated representatives left the room.

The defendant railroad rested its refusal to meet or deal with the designated representatives of the plaintiff on the fact that a contract which the defendant railroad had executed with a labor organization known as Dining Car Employees Union Local 351, contained provisions stating that employees could have as representatives in such proceedings only an employee of the company.

Resting on his right under the Railway Labor Act to have a representative of his own choice, plaintiff advised Mr. Bueschel that unless he was permitted to be represented by a representative of his own choice, he would withdraw from hearing, which he did.

Shortly after September 24, 1947, plaintiff received a letter from defendant rail-

road, dated September 24, 1946, advising him as follows: "As a result of your failure to attend investigation held in my office 1:38 P.M. Central Standard Time, Tuesday, September 23, 1947, this as instructed in my letter to you September 17, 1947, you are dismissed from the service effective today, September 24, 1947."

Plaintiff thereafter brought this action alleging that his discharge involved a direct violation of the Railway Labor Act.

Statutory Provisions Involved.

Railway Labor Act, 45 U.S.C.A. § 151: "Sixth. The term 'representative' means any person or persons, labor union, organization, or corporation designated either by a carrier or a group of carriers or by its or their employees to act for it or them."

Sections 151a, 152:

"The purposes of the Act are: (1) To avoid any interruption to commerce or to the operation of any carrier engaged therein; (2) to forbid any limitation upon freedom of association among employees or any denial, as a condition of employment or otherwise, of the right of employees to join a labor organization; (3) to provide for the complete independence of carriers and of employees in the matter of self-organization to carry out the purposes of this Act; (4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules or working conditions; (5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.

\*       \*       \*       \*       \*       \*

"Second. All disputes between a carrier or carriers and its or their employees shall be considered, and, if possible, decided with all expedition, in conference between representatives designated and authorized so to confer, respectively, by the carrier or carriers and by the employees thereof interested in the dispute.

"Third. Representatives, for the purposes of this Act, shall be designated by the respective parties without interference, influence, or coercion by either party over 'he designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives. Representatives of employees for the purposes of this Act need not be persons in the employ of the carrier, and no carrier shall, by interference, influence or coercion seek in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier.

\*       \*       \*       \*       \*       \*

"Eighth. Every carrier shall notify its employees by printed notices in such form and posted at such times and places as shall be specified by the Mediation Board that all disputes between the carrier and its employees will be handled in accordance with the requirements of this Act, and in such notices there shall be printed verbatim, in large type, the third, fourth, and fifth paragraphs of this section. The provisions of said paragraphs are hereby made a part of the contract of employment between the carrier and each employee, and shall be held binding upon the parties, regardless of any other expressed or implied agreements between them."

The basic issue involved in this case arises out of the fact that the plaintiff sought to act through representatives of his own choosing, while the defendant imposed as a specific requirement that any person representing the plaintiff must be an employee of the company. Defendant sought at that time and seeks in the proceeding before this Court to justify its position on the basis of the contents of a collective bargaining agreement between itself and the labor organization.

It is plaintiff's contention that under the terms of the statute he was entitled to representation of his own choice regardless of whether or not his selected representative was an employee of the company, and the defendant could not deprive the plaintiff of this statutory right by any contract.

The Railway Labor Act defines the term "representative" as meaning "any person or persons, labor union, organization \* \* designated \* \* \* by \* \* \* employees, to act for \* \* \* them." The definition itself thus admits of no discrimi-

nation and no limitations as to the person or persons or organization which employees may designate to act for them.

In order to eliminate the possibility of employers limiting the selection of representatives to their own employees, Section 2, Paragraph Third of the Act provides: "Representatives of employees for the purposes of this Act need not be persons in the employ of the carrier, and no carrier shall, by interference, influence, or coercion seek in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier."

By the provisions of Paragraph Eighth of Section 2 of the Act, the provisions of Paragraph Third as just set forth were expressly "made a part of the contract of employment between the carrier and each employee, and shall be held binding upon the parties * * *."

Plaintiff contends that such statutory language negates the right of any carrier to insist that an employee choose as his representatives only those who are employees of the carrier, which is what the carrier in this instance attempted to do.

The defendant carrier places its reliance in the instant case upon the provisions of a collective bargaining agreement between itself and a labor organization known as Dining Car Employees Local 351. The carrier insists that under the terms of that agreement the carrier was given the right to restrict the choice of representatives of an employee solely to those who were employees of the carrier.

Plaintiff asserts that this contention of the carrier is answered in the terms of the statutory language itself and also by the decisions of the courts, including the Supreme Court of the United States.

With respect to the statutory language plaintiff places great emphasis on the language of Section 2 Third which states that representatives of employees for the purposes of the Act "need not be persons in the employ of the carrier" and further prohibiting the carrier from seeking "in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier." Plaintiff states that the statute goes further in the direction of negating the contention advanced by the defendant carrier in the instant case. In Section 2 Eighth of the statute the provisions of Paragraph 3 just referred to are specifically "made a part of the contract of employment between the carrier and each employee" and these provisions are required to be "held binding upon the parties, regardless of any other express or implied agreements between them."

Plaintiff contends that the doctrine has now been authoritatively established by the United States Supreme Court that there is an area within which under the Railway Labor Act despite the designation of a union as a majority representative, the individual employee retains certain individual statutory rights. One of these is the right to an individual role in the settlement of his own personal grievances unless he has specifically authorized and delegated to the union the function of acting for him in the disposition of those grievances.

The decision of the United States Supreme Court in delineating this realm of the preservation of individual rights under the Railway Labor Act is set forth in the case of Elgin, Joliet and Eastern Railway Company v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 1289, 89 L.Ed. 1886, affirmed on rehearing 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928. That case turned on questions relating to the authority of the union designated by a majority of the employees in a unit to affect the rights of individual employees with respect to their personal, individual grievances. The Supreme Court analyzed and noted the "difference between disputes over grievances and disputes concerning the making of collective agreements". The Court summarized this distinction in the following terms: "In general the difference is between what are regarded traditionally as the major and the minor disputes of the railway labor world."

With reference to the rights of individual employees in connection with their own personal grievances, the Court had the

following to say: "The collective agreement could not be effective to deprive the employees of their individual rights. Otherwise those rights would be brought within the collective bargaining power by a mere exercise of that power, contrary to the purport and effect of the Act as excepting them from its scope and reserving them to the individuals aggrieved. In view of that reservation the Act clearly does not contemplate that the rights saved may be nullified merely by agreement between the carrier and the union."

It is defendant's argument that it did not violate the Railway Labor Act in insisting that the plaintiff's representative at the disciplinary hearing of September 23, 1947, comply with the terms of the bargaining agreement. Defendant contends that the bargaining agreement justified his action and that the plaintiff's rights must rest solely on the contract and not on the statute.

Plaintiff contends that such argument advanced by the defendant indicates that defendant disagrees with the Elgin Joliet decisions supra.

The defendant indicates its rejection of the Supreme Court' decision when it argues that the designation of a representative under the Act means only the designation of a representative by a group of employees and does not permit the designation of a representative by an individual employee who happens to have a grievance or dispute affecting himself alone. The Supreme Court in its decision in the first Elgin Joliet case devoted many pages to an analysis of "The difference between disputes over grievances and disputes concerning the making of collective agreements".

This difference the Court explained is "between what are regarded traditionally as the major and the minor disputes of the railway labor world."

The major disputes, the Court noted "present the large issues about which strikes ordinarily arise with the consequent interruptions of traffic the Act sought to avoid." With respect to the others, the Court pointed out that: "The so-called minor disputes, on the other hand, involving grievances, affect the smaller differences which inevitably appear in the carrying out of major agreements and policies or arise incidentally in the course of an employment. They represent specific maladjustments of a detailed or individual quality".

It is defendant's position that the Elgin Joliet decisions did not involve a disciplinary hearing conducted by an employer. It contends that the question there was the extent of the authority of the officers of the bargaining representative to bind individuals in the adjustment and settlement of individual claims—not in a disciplinary hearing or in conference with officers of the carrier—but in proceedings before the National Railroad Adjustment Board.

Plaintiff asserts that such a limitation on the significance of the Elgin Joliet decision, as advanced by defendant, overlooks the language of the Court in discussing the procedures established and required by the statute for the handling of both the major and the minor disputes. The Court indicated that these requirements are not limited to the stage of submission to the National Railroad Adjustment Board. On the contrary, the Court said:

"Broadly, the statute as amended marks out two distinct routes for settlement of the two classes of dispute, respectively, each consisting of three stages. The Act treats the two types of dispute alike in requiring negotiation as the first step toward settlement and therefore in contemplating voluntary action for both at this stage, in the sense that agreement is sought and cannot be compelled. To induce agreement, however, the duty to negotiate is imposed for both grievances and major disputes.

"Beyond the initial stages of negotiation and conference, however, the procedures diverge."

Having outlined the extent to which the procedures for the handling of the two types of disputes have elements of similarity and of difference, the Court then addressed itself specifically to the question of the power of the collective bargaining agent (the union) as distinguished from the pow-

er of the individual employee with respect to each of the two types of disputes. On this subject the Court had the following to say:

"II.  The collective agent's power to act in the various stages of the statutory procedures is part of those procedures and necessarily is related to them in function, scope and purpose.

"The statute itself vests exclusive authority to negotiate and to conclude agreements concerning major disputes in the duly selected collective agent.  *  *  *

"Whether or not the agent's exclusive power extends also to the settlement of grievances, in conference or in proceedings before the Board, presents more difficult questions."

At this point the Court answered the contention now made by the defendant by pointing out that although the particular case before it happened to arise out of a situation in which the proceedings had gone before the National Railroad Adjustment Board that nevertheless the answers to the question of individual rights before that Board while not identical are substantially the same as with respect to individual rights in the stages of conference and negotiations with the carrier.  "The questions of power to bargain concerning grievances, that is, to conclude agreements for their settlement, and to represent aggrieved employees in proceedings before the Board are not identical.  But they obviously are closely related in the statutory scheme and in fact.  If the collective agent has exclusive power to settle grievances by agreement, a strong inference, though not necessarily conclusive, would follow for its exclusive power to represent the aggrieved employee before the Board.  The converse also would be true.  Accordingly it will be convenient to consider the two questions together."

The railroad in the Elgin Joliet case argued for the exclusive power of the collective agent, the union, as against the individual power of the individual employee and made no distinction in its argument between the situation in the stage of grievance negotiation and discussion and in the stage of presentation to the Board. As the Court summarized the petitioner's position: "Accordingly, petitioner urges that the statute, both by its terms and by its purpose, confers upon the collective agent the same exclusive power to deal with grievances, whether by negotiation and contract, or by presentation to the Board when agreement fails, as is given with respect to major disputes.  And the aggrieved employee's rights of individual action are limited to rights of hearing before the union and possibly also by the carrier."

With respect to this argument, the conclusion of the Court was as follows: "We think that such a view of the statute's effects, in so far as it would deprive the aggrieved employee of effective voice in any settlement and of individual hearing before the Board, would be contrary to the clear import of its provisions and to its policy."

It can serve no purpose for the defendant to demonstrate its compliance with the contract as long as the defendant acted in violation of the statute.  As indicated in the quoted language from the Elgin Joliet case above, "The collective agreement could not be effective to deprive the employees of their individual rights."  In the instant case the plaintiff rests on the Railway Labor Act and it is the defendant which asserts the contract as an alleged defense of its violation of the statute.  The position of the plaintiff is that the contract cannot operate to deprive the plaintiff of his statutory rights.

Plaintiff contends that there can be no doubt that he had and has a statutory right under the terms of the Railway Labor Act to designate a representative of his own choosing and that the carrier acted in violation of the statute when the carrier sought to restrict plaintiff in his choice of representation to those who were employees of the defendant carrier.

With respect to damages, the parties stipulated at the hearing as to the amounts which the railroad would have paid to plaintiff in the form of monthly salary if he had remained at work subsequent to his discharge and down to the date of the

hearing, and the parties also stipulated as to the amount he had actually earned elsewhere during the same period. The plaintiff testified without denial or refutation to the amount which he earned in the form of tips on each round trip on the specific assignment which he held at the time of his discharge. Plaintiff estimates that the total amount which he would have been able to earn had he been permitted to remain in the employment of the railroad, including salary and tips, exceeds the total amount which he has been able to earn in other employment since his discharge and down to the time of the hearing by $9,224.67.

The letter of discharge sent by the railroad to the plaintiff on September 24, 1947 (Plaintiff's Exhibit 11) declares that his dismissal from the service is "a result of your failure to attend investigation held in my office 1:38 P.M. Central Standard Time, Tuesday, September 23, 1947." It is thus admitted by the defendant that the circumstance of the plaintiff's dismissal from the service of the defendant arises out of the occasion on which he attempted to assert his statutory right while the defendant carrier denied his statutory right.

There is no issue raised in this proceeding with respect to the events of September 14, 1947, aboard the train, which led to the later presentation of charges against the plaintiff. The issue presented here arises from the dispute as to whether there was a denial of plaintiff's statutory rights in connection with the hearing held on those charges.

After thorough consideration of the briefs submitted and the authorities cited therein, it is my conclusion that under the Railway Labor Act the plaintiff has a statutory right to designate a representative of his own choosing and the carrier acted in violation of the statute when it sought to restrict plaintiff in the choice of his representation to those who were employees of the defendant carrier. Insofar as plaintiff's discharge was a result of the railroad's failure to respect the plaintiff's statutory rights of representation, the plaintiff is entitled to judgment against the defendant in the amount of $9,224.67.