SWITCHMEN'S UNION OF NORTH AMERICA, an unincorporated labor union, and J. L. Shay, Plaintiffs,

v.

LOUISVILLE AND NASHVILLE RAILROAD COMPANY, a corporation (Serve M. C. Browder, 908 W. Broadway, Louisville, Kentucky, Process Agent), Defendant.

Civ. A. No. 2628.

United States District Court
W. D. Kentucky, at Louisville.
March 22, 1955.

Louis Lusky, Louisville, Ky., Solomon Sachs, Chicago, Ill., for plaintiffs.

C. S. Landrum, Lexington, Ky., J. P. Hamilton, Louisville, Ky., for defendant.

Samuel M. Rosenstein, Herman G. Handmaker, Louisville, Ky., for intervening defendants Brotherhood of Railroad Trainmen.

SHELBOURNE, Chief Judge.

This action was instituted in this Court June 5, 1953 by the filing of the complaint of Switchmen's Union of North America and by J. L. Shay as plaintiff and Louisville and Nashville Railroad Company, defendant. July 21, 1953, the Brotherhood of Railroad Trainmen was, by order of Court, permitted to intervene as defendant.

The complaint alleged jurisdiction in this Court under Title 28 U.S.C. § 1337 and sought a declaration of rights as authorized by Section 2201 of Title 28 U.S.C. claiming that its right to such declaration of rights emanated from a violation of the defendant Railroad Company of plaintiffs rights under the provisions of the Railway Labor Act, Title 45 U.S.C.A. § 151 et seq.

Each defendant filed a motion to dismiss accompanied by certain factual affidavits and exhibits, which did not dispute but tended to amplify the essential allegations of facts contained in the complaint.

The essential facts, considered as true on the motion to dismiss, may be summarized as follows:

J. L. Shay was for many years prior to November 4, 1950 employed by the Railroad as a switchman; on the date aforesaid he was discharged for the violation of the Railroad's operating rules; at the time of his dismissal Shay was a member of plaintiff, Switchmen's Union of North America;

The intervening defendant, Brotherhood of Railroad Trainmen was the statutory collective bargaining agent and representative of the craft or class of the Railroad's employees of which Shay was a member;

Following his dismissal by Railroad Shay, denying the infraction of rules charged to him and claiming that his dismissal was an improper and inappropriate discipline even if the charged infraction had taken place, designated the Switchmen's as his representative to confer and treat with Railroad upon his claimed grievance;

Railroad refused to negotiate with the Switchmen's Union, claiming that it was precluded from so doing by Articles 31 and 42 of the bargaining agreement in force between it and Shay's craft negotiated for the craft by the Brotherhood union.

Articles 31 and 42 of that agreement are as follows:

"Article 31

"Investigations and Discipline

"1. Trainmen will not be demerited, disciplined or discharged without just cause. When such action shall become necessary, the accused shall be duly apprised, in writing, within ten (10) days of the oc-

currence, the nature of the charge or charges that are to be brought against him; and within five (5) days after such notification he will be given an investigation by the proper officer of the Railroad, at which time all evidence in the case will be submitted. A proper record in the case will be kept, authenticated by both parties, and made the basis for any discipline that may be administered, or an appeal to a higher officer.

"2. The accused will be permitted to attend the investigation, hear all the evidence submitted and be represented by fellow employes of his own selection. Within thirty (30) days after the investigation closes, the proper officer will render a decision, and advise the accused, in writing, the penalty imposed. If the decision is unsatisfactory, the accused, through his representatives, will have the right to appeal to higher officers of the Railroad. In the event the charge or charges are not proven, the accused will be promptly restored to the service with full rights and paid full wages for any time he may have lost as a result of the charge or investigation.

"3. Trainmen losing a run or day's work attending the investigations in connection with matters coming under this Article, who are not held responsible, will be paid full wages for any time they may have lost as a result of investigation."

"Article 42.

"Representation and adjustment of matters.

"(a) Local grievances and differences of opinion shall be taken up with division officers by the duly authorized representatives of the men. Failing to be adjusted, they will be referred to the general officers. When an appeal is to be taken to the general officers, however, division officers will be advised to that effect, in writing, in order that their data may be sent to the general officers for their use in considering the case.

"(b) 1. General rulings or interpretations will not be made on this Agreement between sessions of General Committee, except in conference, held between General Officers and General Chairman. Should such rulings be agreed upon a copy will be furnished to the parties affected and the General Chairman.

"2. Local officers and local committees or men will not enter into local agreements."

Shay and the Switchmen's Union allege that under the provision of Section 2, First, Second, Third, Fourth, Sixth, Eighth and Section 3, First (i) of the Railway Labor Act, every employee is guaranteed representation in the handling of individual grievances by any person or labor organization of his choice and that the Act forbids the Railroad from interfering with the employee's choice of a representative and compels the Railroad to meet and negotiate with such representative, though it be a labor organization other than the one chosen by a majority of the craft of which the aggrieved employee is a member and despite any provision of a bargaining agreement making the bargaining agent the exclusive representative, (other than the employee himself) on hearings at company levels.

Plaintiffs seek a judgment in declaration of the rights involved here;

(1) That Articles 31 and 42 of the Agreement between Railroad and Shay's craft negotiated by the Brotherhood are invalid and that defendant Railroad be enjoined from applying, enforcing or continuing in effect such Articles;

(2) That defendant, Railroad, be enjoined from refusing to meet with Shay and Switchmen's Union as Shay's designated representative in a good faith effort to settle or adjust the dismissal and/or reinstatement of plaintiff Shay".

A more detailed statement of the handling of Shay's initial hearing when charged with violations of the operating

rules of the Railroad and the subsequent conduct of his grievance as reflected in the complaints and affidavits is that he, when notified, pursuant to the provisions of Article 31 of the bargaining agreement, of the charges against him, appeared alone for the initial hearing conducted by Train Master T. E. Schwind on October 24, 1950. Following this hearing and on November 4, 1950, the carrier notified the plaintiff of his dismissal pursuant to the charges. Shay then requested his Union, plaintiff herein, to appeal his discharge before G. C. Howard, the carrier's director of personnel and provided the plaintiff Union with a power of attorney for that purpose. The plaintiff Union appeared on the carrier's property through the visit of two of its officials seeking reconsideration of the plaintiff's discharge pursuant to contract's article 31.2, providing for an appeal to higher officers of the Railroad, and in accordance with Section 3, First (i) of the Railway Labor Act for handling disputes "up to and including the chief operating officer of the carrier". A request by these union officials for the full record regarding the plaintiff employee's hearing and discharge was referred to the attention of personnel director G. C. Howard, but never acknowledged by him nor were further letters from the plaintiff union in this matter ever answered by G. C. Howard. The plaintiff employee has never sought this second-step negotiation with the carrier in person, relying entirely upon the plaintiff Union's efforts on his behalf.

On April 12, 1951, the Switchmen's notified the Railroad that if its requests for a conference concerning the plaintiff employee's discharge were not answered within a reasonable time, it would file the dispute with the National Railway Adjustment Board. This it did along with a statement of the claim and the employee position relevant thereto. On October 11, 1951, the carrier filed its statement of position, and on July 23, 1952, the National Railroad Adjustment Board, through Referee Thomas J. Mabry, made its findings, upholding the defendant carrier.

Although both the defendant carrier and the plaintiff Union argued the merits of the question of "just cause", their respective statements also pleaded the issue of the carrier's right to deny the plaintiff Union a conference or "hearing" on the property of the carrier.

It was this issue which the Referee adjudicated in favor of the carrier. The Referee of the Adjustment Board made the following findings relevant to this Memorandum:

"Was petitioner Pollard, International Vice-President of the Switchmen's Union of North America, authorized to represent claimant on the property, as he undertook to do? There can be no doubt that under the statute an employee has absolute freedom of representation before this Division. And it is equally well settled that he has no such freedom under contract. Carrier and employee may contract so as to restrict representation on the property. See Br[o]ady v. Illinois Central Railroad Company, U.S.C.A., Seventh Circuit, 96 F.Supp. 751, 20 L.C. 66, 462, [191 F.2d 73] decided in 1951; and Butler v. Thompson, U.S.C.A. Eighth Circuit [192 F.2d 831] 20 L.C. 66, 68, also recently decided.

"Under the governing agreement (Article 42) we have such a restriction on the right to representation, by which only the 'duly authorized representatives of the men', meaning, as we interpret this provision, the representative or representatives of the craft duly certified as the designated representative, or bargaining agency, on the property.

"Under the Railway Labor Act, the Brotherhood of Railroad Trainmen is the duly authorized representative of the man of claimant's craft, and claimant could not avoid this restriction on his power to select a representative of his own choice,

as he attempted to do in the instant case.

"If there be a lack of clarity in the language in Article 31, it must be said that when this article is read in connection with Article 42, which bears the heading, 'Representation and Adjustment of Matters', the meaning is unmistakable, and Mr. Pollard was without authority and carrier could quite appropriately, as it did, refuse to confer with him in the matter.

"Therefore, aside from other questions, including that of whether the appeal from the discipline imposed was taken in time, none of which need be, or are decided, we are constrained to hold that claimant did not handle his claim as required by the governing contract and no relief can be afforded."

The contentions of the defendants may be summarized as—

(1) The complaint fails to present a controversy which is justiciable in the Courts.

(2) The allegations of the complaint do not present a question arising under the Constitution or laws of the United States and therefore a Federal District Court lacks jurisdiction.

The plaintiffs contend;

(1). Articles 31 and 42 of the collective bargaining agreement in so far as they require the Railroad to treat with the employee or the Brotherhood of Trainmen as the designated representative and exclude any other Union as employee's representative in hearings at Company levels on grievances are void because they violate the Railway Labor Act.

(2). The Federal District Courts have jurisdiction of suits for injunctive relief against illegal contracts or acts in violation of the Railway Labor Act.

(3). The decision of the Railroad Adjustment Board that it could not consider Shay's grievance on the merits because he did not progress his claim at Company levels as required by the Col-

lective Bargaining Agreement does not preclude a Court to determine the validity of such contractual provisions.

The sections of the Railroad Labor Act here involved are subsections (i) and (j) of First of Section 153, Title 45 United States Code Annotated, and are:

"(i) The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.

"(j) Parties may be heard either in person, by counsel, or by other representatives, as they may respectively elect, and the several divisions of the Adjustment Board shall give due notice of all hearings to the employee or employees and the carrier or carriers involved in any disputes submitted to them."

Shay did not seek a hearing before the "Chief Operating Officer of the carrier" except through representation by the Switchmen's Union. That hearing was denied by the Carrier because of the portion of Article 31 of the bargaining agreement providing that the employee "will be permitted to attend the investigation, hear all the evidence submitted *and be represented by fellow employees of his own selection.*" (Emphasis added); also Article 42 of the agreement providing that "local grievances and differences of opinion shall be taken up with the division officers

by the *duly authorized representatives of the men."* (Emphasis added).

Both plaintiffs and defendants agree that by the terms of Articles 31 and 42 the Switchmen's Union was not a proper representative of Shay and that if the Brotherhood of Trainmen as the bargaining agent was authorized to agree upon the machinery, including representation for handling grievances of individual employees, the Carrier was right in declining to permit Switchmen's to appear for Shay.

There is no dispute here that the provisions of subsections (i) and (j) of Section 153 First, of the Railway Labor Act require as a condition precedent to the right of either party to an employee's grievance to refer the grievance to the Adjustment Board that the grievance shall be heard "up to and including the chief operating officer of the carrier designated to handle such disputes."

Hence the conclusion is obvious that if the machinery for hearing and determining disputes arising out of a grievance between an employee and the carrier is a proper subject for collective bargaining, then the plaintiffs' cause of action is not justiciable in this Court.

Plaintiffs' Counsel argues in brief that the holding in the case of Elgin, Joliet & Eastern R. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 imposes upon the carrier the same mandatory duty to treat with a minority union with respect to grievances as it imposed to treat with a majority union with respect to the making of collective agreements. That the holdings of this case together with that in the cases of Texas & N. O. R. Co. v. Brotherhood of Ry. & S. S. Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L. Ed. 1034 and Virginian Ry. Co. v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 give the district courts jurisdiction to require carriers to negotiate with minority unions in respect of grievances in instances wherein the minority Union is designated by the employee to represent him.

Plaintiffs, in support of the contention that Articles 31 and 42 of the bargaining agreement limiting the carrier to treat only with the bargaining Union in handling grievances violates Shay's rights under the Railway Labor Act to choose any Union as his representative on his claim for reinstatement, rely upon the cases of Elgin, Joliet & Eastern R. Co. v. Burley, supra, and Douds v. Local 1250 Retail Wholesale Department Store Union, 2 Cir., 173 F.2d 764, 9 A.L.R.2d 685 and upon the opinion of the Attorney General of the United States, 40 Op. Atty. Gen. No. 116.

The Elgin, Joliet & Eastern R. Co. v. Burley case is authority that the collective bargaining agent can not exclude the individual employee from active participation in hearings before the Carrier's officers involving the adjustment of the employee's grievance arising out of this individual contract of employment. The Supreme Court there forbids the bargaining agent, without express authorization, over and above its statutory power as such bargaining agent, to settle the individual grievance of an employee or to be his exclusive representative in proceedings before the National Railroad Adjustment Board affecting the individual grievance. The Burley case does not reach the situation in the case at bar where the employee neither sought nor was denied the right personally to present his grievance to the highest operating officer of the Carrier.

The Douds case involves a construction of the National Labor Relations Act and National Labor Management Relations Act, particularly Section 10(*l*) of the latter act, 29 U.S.C.A. § 160 (*l*). The National Railway Labor Act was not there involved. The provisions of the acts are not the same in respect of the method of presentation and hearing of individual grievances, the so-called minor disputes or grievances of the employee as there distinguished from the class or craft grievances referred to as major disputes.

The opinion of the Attorney General, which followed closely in time the decision of the Supreme Court in the Elgin, Joliet & Eastern R. Co. v. Burley case clearly and unequivocally supports the plaintiff's contention here, but cases from Federal Courts since the opinion was announced have seemed to find compelling language in the Railway Labor Act to the contrary.

In the case of United Railroad Workers of America, Independent v. Atchison, T. & S. F. R. Co., D.C., 89 F.Supp. 666, Wilson an employee was discharged for violation of duty. System Federation was the duly authorized collective bargaining agent for all members of Wilson's craft, the Maintenance and Equipment employees at Chicago. The bargaining agreement provided the manner for presenting grievances of the employees to the officers of the railroad, giving to the aggrieved employee personally or through the bargaining agent, System Federation, the right to present and appeal his grievances. Wilson requested the bargaining agent to appeal his grievance and the agent refused. Wilson then designated the plaintiff, a minority shop union, to appeal his grievance. The Carrier refused to recognize the minority union as Wilson's representative, on account of the above limitation upon representation at hearings before the officers of the Railroad contained in the bargaining agreement. The Minority Union appealed to the National Railroad Adjustment Board. The Board denied jurisdiction on the ground that Wilson had failed to comply with the statutory requirement of handling his dispute "in the usual manner up to and including the chief operating officer of the Carrier designated to handle such disputes." The Adjustment Board found in that case, as it did in the case at bar, that the "usual manner" of handling a dispute was the procedure prescribed by the collective bargaining agreement and Wilson having failed to pursue his remedy there provided had deprived the Board of jurisdiction.

It was not contended in that case that the procedure to be followed by an aggrieved employee was not a proper subject of collective bargaining.

Broady v. Illinois Central R. Co., 7 Cir., 191 F.2d 73, 76, involved an action instituted in the District Court for reinstatement and back pay. Broady was cited for discipline for violation of rules. The bargaining agent of his craft was Dining Car Employees Union, and the bargaining agreement provided that in hearings on disputes or grievances before company officers the employee could be represented only by Dining Car Employees Union. He appeared at the hearing with two representatives of the Switchmen's Union. When advised by the Carrier that the Switchmen's representatives could not speak in his behalf, he left the hearing without attempting to speak for himself and thereafter made no attempt to appeal to the higher officer of the Carrier or to appeal to the National Railway Adjustment Board.

The Court of Appeals reversed the judgment of the lower Court granting Broady relief for the reason, said the Court

"We can find no provision of the Railway Labor Act which gives to employees the right to a representative of their own choice at an investigation by company officials of a charge that the employee has violated company rules."

The Court held that the right of representation of aggrieved employees at hearings at the company levels was a procedure to be regulated by the bargaining agreement.

The Court of Appeals of the Sixth Circuit in the recent case of National Labor Relations Board v. Associated Machines, Inc., 219 F.2d 433, 436 says the popular concept of grievance is that "it may perhaps be considered to refer to all complaints by an employee against his employer and so includes most of the objectives of collective bargaining."

The language of subsections (i) and (j) of the Railway Labor Act, Section 153, First (i) and (j), Title 45 U.S.C.A., supports the conclusions reached in the cases such as United Railroad Workers of America, Independent v. Atchison, Topeka & Santa Fe Railroad Co. and Broady v. Illinois Central Railroad, supra.

Subsection (i) providing for disputes growing out of grievances being handled "in the usual manner" indicates strongly that the "usual manner" would be determined by a contract between the carrier and the chosen bargaining agent of the employees and could be limited as provided in the bargaining agreement in the case at bar, if that agreement permitted the agreed employee active participation and voice in the hearing on his grievances.

These hearings are provided for in the subsection between the officers of the carrier and the employee and the bargaining agent, if the employee accepts representation of such agent.

The provision of the next subsection (j) provides that when the hearing reaches the Adjustment Board the agreed employee may have representation personally by Counsel or "other representatives." This indicates that the representation is unlimited as to hearings before the Adjustment Board. The specific authorization for representation at hearings before the Adjustment Board and the use of the term "in the usual manner" with respect to hearings before the Railroad officers authorizes the construction that the inclusion of unlimited representation only before the Adjustment Board includes representation only as provided in the bargaining agreement in the hearings on the property.

It is therefore concluded that this Court is without jurisdiction to make any declaration of rights of the parties for the reason that the Railway Labor Act, in its adequate provisions for the settlement of grievances, provides an administrative remedy which gives exclusive jurisdiction for the hearing and settlement of such disputes. That procedure must be followed on grievances.

Accordingly, and for the reasons here stated, an order will be entered this day sustaining the motions of the defendants to dismiss the complaint.