**UNITED RAILROAD WORKERS OF AMERICA, INDEPENDENT, et al. v. ATCHISON, T. & S. F. R. CO. et al.**

Civ. A. No. 49 C 355.

United States District Court
N. D. Illinois, E. D.
March 3, 1950.

F. John Cushing, Jr., Robert K. Corkhill, Chicago, Ill., for plaintiffs.

Thomas J. Barnett, Floyd J. Stuppi, Philip von Ammon, Chicago, Ill., for defendants.

IGOE, District Judge.

This cause is before the Court for disposition of the motions of the defendants, The Atchison, Topeka and Santa Fe Railway Company (hereinafter referred to as Santa Fe) and System Federation No. 97, Railway Employes' Department, American Federation of Labor (hereinafter referred to as System Federation) to dismiss the amended complaint. There is a third defendant, National Railroad Adjustment Board, Second Division (hereinafter referred to as the Board) on whose behalf no motion or responsive pleading has been filed.

Plaintiffs are Alvin R. Wilson, Sr., a machinist formerly in the employ of the Santa Fe at Chicago, and United Railroad Workers of America, Independent (hereinafter referred to as Independent), an unincorporated railway labor organization.

The amended complaint alleges that at all times mentioned therein System Federation was, and now is, the duly authorized collective bargaining agent for members of the craft employed in the Maintenance of Equipment Department of the Santa Fe at Chicago, in which craft plaintiff Wilson was employed by Santa Fe on and before June 16, 1947. There was in effect a collective bargaining agreement entered into between System Federation and Santa Fe which was a part of Wilson's contract of employment. Rule 33 of the agreement prescribes the manner in which grievances shall be handled by employees covered by the agreement with the officers of the carrier. This rule permits an aggrieved employee to present and appeal his grievance either personally or through the duly

authorized representative of his craft, i. e., System Federation.[1]

On June 16, 1947 Wilson was dismissed by the Santa Fe following a formal investigation conducted by an officer of the carrier on May 23, 1947. The reasons for Wilson's dismissal are not material to this inquiry. Thereafter, Wilson requested System Federation to appeal his grievance, but System Federation is alleged to have refused the request. Wilson then designated a minority shop union, United Railroad Workers of America, Congress of Industrial Organizations, Local 1618 (hereinafter referred to as CIO), as his representative to appeal his grievance. The CIO agent communicated with the Santa Fe but was advised that under Rule 33 of the collective bargaining agreement appeals may not be handled by persons other than the employee himself or the accredited representative of the craft (System Federation). Subsequent communications from the CIO agent to the successive officers of the carrier through the highest operating official authorized to handle such disputes were not answered by the carrier.

On October 8, 1947, CIO filed with defendant Board a submission asserting a claim on behalf of Wilson against Santa Fe for reinstatement and wages wrongfully withheld, on the ground of wrongful dismissal and subsequent refusal by the carrier to consider an appeal in his behalf. The Board denied jurisdiction on the ground that Wilson had failed to comply with the statutory prerequisite of handling his dispute "in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes." 45 U.S.C.A. § 153, First (i). The Board found that the "usual manner" of handling such disputes was the procedure prescribed by Rule 33 of the collective bargaining agreement with which Wilson had not complied.

The complaint alleges that the refusal of the Santa Fe to recognize the CIO agent as representative of Wilson and the refusal of the Board to take jurisdiction of his submission constituted a taking of property without due process of law and a violation of the Railway Labor Act. As a direct consequence of these acts, the CIO Local is alleged to have suffered a depletion of membership with the result that its charter was withdrawn by the CIO, making necessary its reorganization under the name of the Independent. The defunct Local is not a party to this suit.

The relief prayed for is as follows:

1. Judgment in favor of plaintiff Wilson against the Santa Fe for Fifty Thousand Dollars ($50,000.00) damages or his reinstatement with lost wages and costs of suit.

2. A declaratory judgment declaring that plaintiff Wilson or any other carrier employee having a grievance arising out of interpretation or application of a collec-

---

1. The full Rule reads as follows:

"(a) Should an employe whose wages and working conditions are governed by this Agreement believe that he has been unjustly dealt with, or that any of the provisions of this Agreement have been violated, he or the duly authorized representative of his craft shall take the case to the Foreman within ten (10) days following the occurrence complained of, and if not satisfactorily adjusted, it may then be appealed within fifteen (15) days to succeeding higher officers, and if unable to make satisfactory adjustment, he or the local committee may appeal the case to the Shop Superintendent, Master Mechanic or corresponding officer, each such appeal to be made within fifteen (15) days after decision is rendered.

"(b) If the result is unsatisfactory, the employe or the duly authorized General Chairman shall have the right to appeal in writing to succeeding higher officers of the Company designated to consider appeals, providing appeal is made within sixty (60) days after date of each decision. Such appeals may be made by the employe himself or by the General Chairman representing his craft. Copies of letters of appeal will be given officers appealed from. Should the employe himself or the General Chairman be dissatisfied with the decision rendered by the highest designated officer and further appeal is desired, the case may then be handled in accordance with the Railway Labor Act, providing such appeal is made within ninety (90) days after date of decision.

tive bargaining agreement has the right to negotiate with his employer through the Independent or such other representative as he may designate and to avail himself of the services and processes of the Board through such representative.

The action is said to arise under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., and the Declaratory Judgment Act, 28 U.S.C.A. § 2201.[2] As to the claim of plaintiff Wilson against Santa Fe for damages or reinstatement, diversity of citizenship and jurisdictional amount appear on the face of the complaint.

No motion has been made with respect to the alleged right of action asserted by plaintiff Wilson for damages and reinstatement for alleged wrongful discharge described in paragraph 1. For the purpose of considering the motions now before the Court, counsel for the carrier admits that Wilson has the right to maintain this action for breach of contract under the rule of Moore v. Illinois Central Railroad Company, 1941, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089.

With respect to the claim of both plaintiffs for declaratory relief summarized in paragraph 2 above, Santa Fe and System Federation have filed motions to dismiss on essentially the same grounds which are as follows:

1. The issue as to the right of the minority Independent union and its CIO predecessor to represent Wilson in the presentation of his grievance to the officers of the carrier, and the corollary right of Wilson to select such representative, is not justiciable.

2. There does not presently exist any actual controversy between either plaintiff and either Santa Fe or System Federation under the Declaratory Judgment Act for the reason that the alleged dispute concerning the right of representation has been mooted by Wilson's election to seek damages and reinstatement for wrongful discharge, and for the further reason that

plaintiff Independent was a stranger to all the transactions alleged in the complaint.

3. The complaint does not state a cause of action with respect to the claim of deprivation of property without due process of law.

4. The complaint fails to establish a true class action with respect to the claim for relief on behalf of other carrier employees not parties to the suit and against other carriers.

It is the opinion of the Court that the motions filed on behalf of both defendants to dismiss that part of the complaint which seeks determination of the representation issue must be sustained for the reasons hereafter set forth.

It is apparent from the allegations of the amended complaint that the essence of this controversy is a dispute between two labor unions with respect to the right of representation of members of the machinist craft in the handling of grievances with the Santa Fe. The System Federation, duly certified as the majority representative of the craft for the purposes of collective bargaining under the Railway Labor Act, has negotiated a contract with the carrier which reserves to it the exclusive right to represent machinists in the presentation and appeal of grievances. Under Rule 33, an employee may handle his claim in person. If, however, he wishes representation, his choice is restricted to the majority union. It is not challenged by plaintiffs that the procedure for presenting and appealing grievances is in general a proper subject for collective bargaining.

The minority union, and, through it, one of its members, asserts that this exclusive privilege of representation denies to a member of the craft the privilege of free choice of representatives allegedly guaranteed by the Railway Labor Act. It claims the privilege of presenting to the carrier the grievances of those individuals who seek its services.

---

2. The Declaratory Judgment Act does not supply jurisdiction but merely provides a remedy. Commercial Casualty Insur-

ance Co. v. Fowles, 9 Cir., 1946, 154 F.2d 884, 165 A.L.R. 1068.

Plaintiff cites an opinion of the Attorney General of the United States, 40 Op. Atty. Gen. No. 116 (1946), which purports to rule that a carrier employee may choose his own representative for the presentation of grievances. But we express no opinion as to the correctness of this ruling for the reason that we think it is not the province of the courts to pass upon the jurisdictional dispute here asserted. It is our judgment that this type of dispute is not one which Congress has committed to the courts for determination and that the rights here asserted, if they indeed exist, are not such as are susceptible of judicial enforcement. In the language of the decisions of the Supreme Court of the United States which we deem to be controlling, the controversy is not justiciable. These decisions are Switchmen's Union v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61, General Committee v. Missouri-Kansas-Texas Railroad Co., 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76 and General Committee v. Southern Pacific Co., 320 U.S. 338, 64 S.Ct. 142, 88 L.Ed. 85, all of which were decided on November 22, 1943. In each case there was involved the question of the justiciability of a jurisdictional dispute between two railroad labor unions concerning representation of employees. The Switchmen's Union case concerned the validity of a Mediation Board certification that the Trainmen's Brotherhood was the majority bargaining representative for all yardmen on the New York Central System as against the contention of the Switchmen's Union that it represented the majority of yardmen on certain smaller subdivisions of the carrier. The Missouri-K-T R. Co. case involved a dispute between the Engineers' and Firemen's Brotherhoods as to which had the exclusive right to bargain collectively with respect to the calling of engineers for emergency service. While these two cases involve the right of representation for collective bargaining purposes rather than handling grievances, they provide the broad reasoning upon which the Southern Pacific case was bottomed. In both cases, the court traced the history of the Railway Labor Act, pointing out the "piecemeal" approach taken by Congress to the development of regulatory legislation in the railway labor field and indicating the delicacy of the problems involved and the highly emotional background of the subject. The court reasoned that Congress intended only certain phases of the controversial problem to be subject to the compulsions of the law; it intended to go no further in its use of the processes of adjudication and litigation than the express provisions of the Act indicated. It concluded, as stated in the Missouri-K-T R. Co. opinion, 320 U.S. at page 336, 64 S.Ct. at page 152, 88 L.Ed. 76: "It seems to us plain that when Congress came to the question of these jurisdictional disputes, it chose not to leave their solution to the courts."

The court further stated: "In view of the pattern of this legislation and its history the command of the Act should be explicit and the purpose to afford a judicial remedy plain before an obligation enforcible in the courts should be implied. Unless that test is met the assumption must be that Congress fashioned a remedy available only in other tribunals. There may be as a result many areas in this field where neither the administrative nor the judicial function can be utilized. But that is only to be expected where Congress still places such great reliance on the voluntary process of conciliation, mediation and arbitration. See H. Rep.No.1944, 73d Cong., 2d Sess. p. 2. Courts should not rush in where Congress has not chosen to tread."

The Southern Pacific case involved the same character of controversy which is asserted in the case at bar. The Engineers' Brotherhood was the majority representative of engineers employed by the Southern Pacific Company. The Firemen's Brotherhood was the majority representative of firemen but embraced in its membership certain individuals working as engineers. The Firemen concluded a collective agreement with the carrier which conceded the right of an engineer to select the Firemen's Brotherhood to represent him in the handling of a grievance. The Engineers' Brotherhood filed a bill for declaratory judgment attacking this agreement upon the theory that it had the exclusive right to represent engineers for all purposes. The Fire-

men contended that a contract provision reserving to the Engineers' Brotherhood the exclusive right to represent engineers in the presentation of their individual claims would violate the Railway Labor Act. This, it will be recalled, is the precise contention made by Wilson and the Independent in the case at bar.

After reviewing the arguments of the parties, the court said, 320 U.S. at page 342, 64 S.Ct. at page 145, 88 L.Ed. 85: "All of these would be relevant data for construction of the Act if the courts had been entrusted with the task of resolving this type of controversy. But we do not think they were."

The court said further, 320 U.S. at page 343, 64 S.Ct. at page 145: "We are concerned only with a problem of representation of employees before the carriers on certain types of grievances which, though affecting individuals, present a dispute like the one at issue in the Missouri-Kansas-Texas R. Co. case. It involves, that is to say, a jurisdictional controversy between two unions."

As in the Missouri-K-T R. Co. case and the Switchmen's case, the court held the jurisdictional controversy to be not justiciable.

■ For the reasons set forth in the three decisions of the Supreme Court discussed above, we deem the prayer of the amended complaint for relief concerning the alleged right of the Independent to represent plaintiff Wilson and the alleged corollary right of plaintiff Wilson to be represented by the Independent in the handling of grievances with the carrier not to be justiciable.[3] The motions of Santa Fe and System Federation should be sustained on this ground alone. Since this is the only right of action claimed against the defendant Board, this court, in the exercise of its continuing duty to supervise its own jurisdiction, must dismiss the amended complaint as to that defendant also, although no motion or pleading has been filed in its behalf.

Although the prayer of the complaint seeks a determination that the Independent has the right to represent aggrieved employees before the Board, the complaint does not establish any controversy with respect to that issue. The Board refused to hear the merits of Wilson's claim for wrongful discharge solely on the ground that he had failed to exhaust the purely voluntary settlement procedures on the property of the carrier. As was stated in the Southern Pacific opinion, 320 U.S. at page 343, 64 S.Ct. at page 145, we have here no question involving the representation of employees before the Board, and we express no opinion as to that issue.

■ An equally valid ground for dismissing that part of the amended complaint which demands declaratory relief is that there exists no case of actual controversy within the meaning of the Declaratory Judgment Act. This is true as to the Independent for the reason that it did not come into being as a legal entity, if in fact it is a legal entity, until all the acts of the defendants charged in the complaint had occurred. It was in fact as a result of these acts that the CIO Local was obliged to reorganize as an independent union. The complaint contains no allegations from which it may be inferred that the members of the Independent are the same persons who were members of the CIO Local. For all that appears from the complaint, the only person who was a member of both is the plaintiff, Wilson. If Wilson purports to sue as representative of the class of persons who were first members of the CIO Local and later members of the Independent, the amended complaint does not contain allegations sufficient to establish a true class action.

Still another reason why declaratory relief should not be granted is that any dispute which may have existed between plaintiffs and defendants has been mooted by plaintiff Wilson's election to seek damages and reinstatement for breach of his individ-

3. I understand this conclusion to be consistent with the action taken by Judge Goodman of the Northern District of California in Benton v. Southern Pacific Company, D.C., 89 F.Supp. 906.

ual contract of employment. There is no indication in the complaint that Wilson has any pending grievance against the carrier other than his discharge. A judicial determination of his claim for reinstatement and wages would afford complete relief. Such a determination would render meaningless a declaratory judgment that the carrier should have recognized his CIO representative in an attempt to settle the identical claim.

■ The charge of deprivation of property without due process of law lacks merit for two reasons. In the first place, private parties, as distinguished from agencies of the government, either state or federal, are not charged with the protection of constitutional rights. In consequence, their conduct is not deemed to be unconstitutional. Shelley v. Kraemer, 1948, 334 U.S. 1, 8, 68 S.Ct. 836, 92 L.Ed. 1161, 3 A.L.R.2d 441. Second, the Railway Labor Act does not accord any binding effect to the decision of the highest operating official of a carrier to disallow a grievance claim. Such a decision amounts to nothing more than a refusal to settle. As such, it does not constitute a deprivation of any property rights. Similarly, the refusal of the Board to entertain the merits of Wilson's claim for wrongful discharge does not constitute a final adjudication of that claim. It merely remands Wilson to the conciliatory procedures which the statute prescribes as a mandatory condition precedent to submission to the Board.

■■ Finally, although it is not essential to the determination of the pending motions, we agree with defendants that the demand for a wholesale adjudication of the rights of all carrier employees to representation by persons of their choice in handling grievances with their respective employers is without merit. No decree of this Court could operate as a binding adjudication of the rights of any persons other than the parties to this cause. This is not to say that binding decrees cannot be made with respect to persons other than the named parties to an action, if they are members of a class and if they are adequately represented. But no such representation is alleged in this complaint, nor does it contain any allegations establishing that this controversy exists between carrier employees other than Wilson, and carriers other than Santa Fe. While parties to a controversy may of course be brought before the court by the class action device, if the requirements for a class action are met, they must nevertheless be parties to the controversy sought to be adjudicated, and not merely persons who, because of actual or potential involvement in similar controversies, are interested in the judicial precedent which may be established.

■ There remains pending and undisposed the action of plaintiff Wilson against defendant Santa Fe for wrongful dismissal. This is a simple suit for breach of contract and the jurisdiction of this Court is predicated solely on diversity of citizenship. The complaint alleges the jurisdictional amount, but whether plaintiff Wilson ever had a *bona fide* claim in that sum will depend upon the evidence. I merely caution the parties that if from the proofs it shall appear that plaintiff's claim was only colorable, this Court's diversity jurisdiction may be defeated. St. Paul Mercury Indemnity Co. v. Cab Co., 1938, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845.

This Opinion is filed in lieu of findings of fact and conclusions of law. The parties will submit within five days a draft order consistent herewith.