John P. McELROY et al., Plaintiffs-Appellants,

v.

TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, Defendant-Appellee,

and

Brotherhood of Locomotive Engineers, Intervenor-Appellee.

No. 16434.

United States Court of Appeals Seventh Circuit.

Feb. 28, 1968.

Charles R. Judge, Dubail, Judge & Kilker, St. Louis, Mo., and Norman L. Nold, Freeburg, Ill., for plaintiffs-appellants.

Norman J. Gundlach, East St. Louis, Ill., George P. Mueller, George F. Gunn, Jr., St. Louis, Mo., John H. Haley, Jr., Haley, Bardgett & Williamson, East St. Louis, Ill., Ross & Kraushaar, Harold A. Ross, Cleveland, Ohio, for intervenor-appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiffs are 52 employees of the Terminal Railroad Association of St. Louis ("Terminal") and are members of the Brotherhood of Locomotive Firemen and Enginemen ("Firemen"). Terminal is a switching terminal serving 14 trunk-line railroads in the St. Louis area. It is a common carrier by railroad and subject to the Railway Labor Act (45 U.S.C. § 151 et seq.). The complaint alleges that Terminal violated the Railway Labor Act by entering into a November 15, 1965, agreement with the Brotherhood of Locomotive Engineers ("Engineers"), providing that employees working as locomotive engineers must be represented exclusively by the Engineers' union as to grievances processed on the Terminal Railroad, even though the particular employees are members only of the Firemen's union and wish to be represented by that union. Relying on certain provisions of the Railway Labor Act, plaintiffs in effect are seeking a judgment that would require Terminal to confer and negotiate with the Firemen, the representative designated by plaintiffs, in settling grievance and disciplinary matters.

Plaintiffs began their employment with Terminal as locomotive firemen, and their rates of pay, rules of employment and working conditions were established pursuant to collective bargaining agreements between the Firemen and Terminal. They were later promoted to locomotive engineers and have seniority status in both crafts. They shuttle back and forth between the two crafts, depending upon the needs of Terminal. When their seniority standings on the engineers' seniority roster are insufficient to permit their continuing work in that craft, they work in the craft of locomotive firemen. When they work as firemen, the collective bargaining contract between the Firemen and Terminal establishes the applicable rates of pay and working conditions; when they work as engineers, the bargaining contract between the Engineers and Terminal governs such matters.

While 17 of the plaintiffs were working as locomotive engineers, they filed time claims with Terminal. These claims were denied at the initial level on Terminal's property. Thereafter, the Firemen's union appealed the claims to Terminal's General Superintendent and then to its Manager of Labor Relations. These officials denied the appeals on the ground that the November 15, 1965, agreement between Terminal and the Engineers permits only the Engineers' union to represent locomotive engineers in the handling of time claims and grievances.

One of said 17 plaintiffs and another plaintiff were involved in accident investigations conducted by Terminal, and still another plaintiff was called as a witness in one of the investigations, but Terminal refused to permit them to be represented by the Firemen because of the November 15, 1965, agreement between Terminal and the Engineers.

These 19 plaintiffs were joined in the litigation by 33 other employees of Terminal who are also members of the Firemen and sometimes work as locomotive engineers. All 52 asked the District Court to void Articles 34 and 35 of the November 15, 1965, Terminal-Engineers' contract as violative of the Railway Labor Act.

Prior to the November 15, 1965, agreement between Terminal and the Engineers, the railroad had for many years permitted locomotive engineers who were members of the Firemen to be represented by that union for the purpose of settling their grievance or disciplinary problems on the property. Subsequently Terminal has refused to permit the Firemen's union to handle such matters. The reason for this refusal is that Article 34 of the November 15, 1965, agreement between the Engineers and Terminal limits the representation of individual locomotive engineers in the handling of time claims or grievances to the Engineers' union, and Article 35 similarly permits only the Engineers' union to represent individual engineers during the investigation of cases involving their suspension or dismissal.

The District Court permitted the Engineers to intervene and subsequently dismissed the action, holding that the National Railroad Adjustment Board has exclusive jurisdiction over this type of controversy. Concluding that judicial relief is warranted under the Railway Labor Act, we reverse.

This case presents for decision the question left open in General Committee of Adjustment of Brotherhood of Loc. Eng. etc., v. Southern Pacific Co., 320 U.S. 338, 344, 64 S.Ct. 142, 88 L.Ed. 85, namely, whether an employee's assertion of "the privilege of choosing his own representative for the prosecution of his [grievance] claims" under the Railway Labor Act is justiciable. Two courts of appeals and then Attorney General Tom C. Clark have ruled that he has such a privilege,[1] and we agree with their conclusions. Because there is such a privilege, federal court jurisdiction follows.

Ever since Texas and New Orleans R. Co. v. Brotherhood of Railway and Steamship Clerks, 281 U.S. 548,[2] 50 S. Ct. 427, 74 L.Ed. 1034, the federal courts have consistently held that Congress intended them to enforce the commands of the Railway Labor Act.[3] Therefore, if the Railway Labor Act accords these plaintiffs the right to designate the Firemen's union as their representative for settling grievances, the District Court did have jurisdiction to award appropriate relief unless jurisdiction over this dispute has been granted exclusively to the National Railroad Adjustment Board.

The Railway Labor Act has divided disputes between carriers and their employees into two classes. The major disputes concern the making and maintaining of collective bargaining agreements, whereas the minor disputes concern grievances and contract interpretation or application questions.[4] Of course, as to major disputes, it is unquestioned that the Engineers' union is exclusively entitled to represent the plaintiffs, when working as locomotive engineers, by virtue of Section 2 Ninth of the Railway Labor Act. See Virginian Railway v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789.

Section 2 Second of the Railway Labor Act provides that all disputes shall be considered "in conference between *representatives designated* and authorized so to confer, respectively, by the carrier or

1. Estes v. Union Terminal Co., 89 F.2d 768, 770 (5th Cir. 1937); General Committee v. Southern Pacific Co., 132 F.2d 194 (9th Cir. 1942), reversed on jurisdictional grounds, 320 U.S. 338, 64 S.Ct. 142, 88 L.Ed. 85. 40 Op.A.G. 494 (1946).

2. This holding was justified by H.R.Rep. No. 328, 69th Cong., 1st Sess., pp. 1–2, where the House Committee on Interstate and Foreign Commerce expressed the desirability of judicial aid to settle questions under the Railway Labor Act.

3. Virginian Railway v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.

Ed. 789; Steele v. Louisville & Nashville R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L. Ed. 173; Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283; Brotherhood of Railroad Trainmen v. Chicago River & Indiana R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622; Felter v. Southern Pacific Co., 359 U.S. 326, 79 S.Ct. 847, 3 L.Ed.2d 854.

4. Brotherhood of Railroad Trainmen v. Chicago River & Indiana R. Co., 353 U. S. 30, 33, 77 S.Ct. 635, 1 L.Ed.2d 622.

carriers and *by the employees* thereof interested in the dispute" (45 U.S.C. § 152 Second; italics supplied). On its face, this provision guarantees an individual employee the right to prosecute his grievances through any representative he may designate. This reading of Section 2 Second is buttressed by the legislative history of the Railway Labor Act of 1934. In the House hearings, both Commissioner Eastman and George Harrison, the spokesman for the standard railroad labor unions, expressed the view that railroad employees have the right to be represented by minority unions in grievance matters.[5] This construction is consonant with other provisions of the Railway Labor Act. Thus Section 2 Third permits employees and carriers to designate representatives without interference from either side, and the representatives of the employees need not even be employees of the carrier. Section 2 Fourth permits individual employees or their local representatives to confer with management during working hours without loss of time.[6] As to minor disputes, Section 2 Sixth provides that the designated representatives of the employees and carriers have the duty to specify the time and place for a conference within ten days after receipt of notice. In Section 3 First (j), Congress concededly granted employees the right to choose any representatives to act on their behalf in handling minor disputes before the National Railroad Adjustment Board. This is also indicative of a similar Congressional intent as to the preliminary negotiations with the carrier.

The provisions in Section 3 First (i) that minor disputes "shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes" is pertinent too. Admittedly, it was the customary practice on the Terminal for a fireman working as a locomotive engineer to select the Firemen's union as his representative for grievance purposes. The Congressional approval of the "usual manner" of handling grievances shows that the Railway Labor Act was not intended to thwart the established practice in this respect.

Besides the foregoing statutory provisions, the landmark case of Elgin, Joliet and Eastern Railway Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886, sheds light on this problem. There it was determined that individual employees have the right to present their grievances to the National Railroad Adjustment Board. The Court held that "the individual employee's rights cannot be nullified merely by agreement between the carrier and the union. They are statutory rights, which he may exercise independently or authorize the union to exercise in his behalf." 325 U.S. at p. 740, note 39, 65 S.Ct. at p. 1298.[7] Under that interpretation of the Railway Labor Act, it is clear that the Terminal and Engineers cannot nullify these plaintiffs' rights to select the Firemen's union as their representative for grievance purposes. The *Burley* case teaches that individual rights of employees, such as those advanced here, cannot be nullified unless Congress clearly intended such consequences (325 U.S. at pp. 733–734, 65 S.Ct. 1382). No such intent is expressed by the language of the Railway Labor Act. In fact, as seen, the statutory language supports plaintiffs.

In *Burley*, it was noted that the individual employee's ideas of appropriate settlement might differ from the

---

**5.** Hearings of House Committee on Interstate and Foreign Commerce (73rd Cong., 2d Sess.) on H.R. 7650, pp. 44, 89.

**6.** In General Committee v. Missouri-Kansas-Texas R. Co., 320 U.S. 323, 331, 64 S.Ct. 146, 88 L.Ed. 76, the Court recognized that the commands of Sections 2 Third and 2 Fourth are judicially en-

forcible. As to Section 2 Second, a similar indication appears in Steele v. Louisville & Nashville R. Co., 323 U.S. 192, 200, 65 S.Ct. 226, 89 L.Ed. 173.

**7.** The importance of individual choice was also stressed in Felter v. Southern Pacific Co., 359 U.S. 326, 333–334, 79 S.Ct. 847, 3 L.Ed.2d 854, when dealing with Section 2 Eleventh (b) of the Act.

union's, so that an individual employee should be permitted to reject a union settlement of a minor dispute unless he had authorized the union to represent him (325 U.S. at p. 736, 65 S.Ct. 1282). Similarly, if, as here, individual employees do not care to be represented by the majority union in the processing of minor disputes, they should be able to choose their own union for that purpose. Judge Learned Hand so recognized under the Labor Management Relations Act in Douds v. Local 1250, 173 F.2d 764, 772, 9 A.L.R.2d 685 (2d Cir. 1949):

"There only remains the question whether an individual employee or a minority—a 'group'—must negotiate the adjustment of their 'grievance' without the help of a union which it has been their custom to use as their representative. We have little to add to what we said before. Behind the whole Act, indeed, its main presupposition, is the assumption that in industrial negotiations an individual, or a minority, does not bargain on equal terms with an employer. It is not reasonable to suppose that Congress, after giving a minority this privilege, should wish to deprive it of that means of exercising it, which for this reason is the putative condition of its effective use." [8]

Likewise, in General Committee v. Southern Pacific Co., 132 F.2d 194, 198 (9th Cir. 1942), reversed on jurisdictional grounds, 320 U.S. 338, 64 S.Ct. 142, 88 L.Ed. 85, the court pointed out the injustice of having one union represent inter-craft employees, some being members of another union, with rival seniority claims. The court observed that "confidence and trust necessary between a suitor and his representative" would be absent if the employees were required to be represented by unions of which they were not members.

■ Terminal and the Engineers urge that the National Railroad Adjustment Board has exclusive jurisdiction to determine the validity of the clauses in the Terminal-Engineers contract making the Engineers' union the exclusive representative of locomotive engineers in settling grievances and disciplinary matters. However, the Supreme Court has decided that contract validity questions are for the courts and not for the Adjustment Board. Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 774, 72 S.Ct. 722, 96 L.Ed. 1283; Felter v. Southern Pacific Co., 359 U.S. 326, 327, note 3, 79 S.Ct. 847, 3 L.Ed.2d 854. As in Steele v. Louisville & Nashville R. Co., 323 U.S. 192, 205, 65 S.Ct. 226, 89 L.Ed. 173, the Adjustment Board will not give the relief sought here,[9] so that judicial intervention is necessary.

In an effort to show that the courts have no jurisdiction of this controversy, the Terminal and Engineers lean heavily on General Committee v. Southern Pacific Co., 320 U.S. 338, 64 S.Ct. 142, 88 L.Ed. 85. There the Engineers' union sued for a declaratory judgment that the collective bargaining agreement between the Firemen's union and the Southern Pacific Railway was invalid because it permitted engineers belonging to the Firemen's union to have that union represent them in the handling of their grievances. Following two opinions handed down the same day,[10] the Court

8. In *Douds*, Judge Hand approved of and followed Attorney General Tom C. Clark's opinion that the Railway Labor Act invalidates a collective bargaining agreement that prevents an individual from negotiating with the carriers through his own union representative in settling grievances. See 173 F.2d at p. 773.

9. See General Committee v. Southern Pacific Co., 132 F.2d 194, 201 (9th Cir. 1942), reversed on jurisdictional grounds, 320 U.S. 338, 64 S.Ct. 142, 88 L.Ed. 85;

United Railroad Workers of America v. Atchison, Topeka & Santa Fe R. Co., 89 F.Supp. 666, 668 (N.D.Ill.1950); Switchmen's Union v. Louisville & Nashville R. Co., 130 F.Supp. 220, 223–224 (W.D.Ky. 1955).

10. Switchmen's Union v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61; General Committee v. Missouri-Kansas-Texas R. Co., 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76.

concluded that Congress left such "jurisdictional controversies between unions to agencies or tribunals other than the courts" (at p. 344, 64 S.Ct. at p. 145). The dispute there was a pure jurisdictional dispute because the agreement in question did not detract from possible employee rights, but adversely affected only the Engineers' union. Here the individual plaintiffs who work as engineers are adversely affected by the Terminal-Engineers' contract. The question of their right to judicial relief was not involved in the *Southern Pacific* case and was expressly left open *(ibid.)*. The Supreme Court's decision in the related *M-K-T* case recognizes that federal courts do have jurisdiction to enforce the commands of the Railway Labor Act (320 U.S. at pp. 329–331, 64 S.Ct. 146), and there is such a command here.

At the oral argument, the Engineers' union admitted it could sue Terminal for breach of contract if Terminal allowed the Firemen's union to represent plaintiffs in these minor disputes. In such a suit, Terminal could raise the invalidity of Articles 34 and 35 as a defense, rendering the issue justiciable. To our mind, Congress certainly did not intend the unfair result of making this question of justiciability depend solely on the carrier's unilateral decision as to whether or not to abide by its contract.

Terminal and Engineers rely on Broady v. Illinois Central R. Co., 191 F.2d 73 (7th Cir. 1951), certiorari denied, 342 U.S. 897, 72 S.Ct. 231, 96 L.Ed. 672; Edwards v. St. Louis-San Francisco R. Co., 361 F.2d 946 (7th Cir. 1966); Brooks v. Chicago, Rock Island & Pacific R. Co., 177 F.2d 385 (8th Cir. 1949), and Butler v. Thompson, 192 F.2d 831 (8th Cir. 1951). Those cases did not involve the unique situation presented here where employees shuttle back and forth between their crafts. Here, by virtue of Section 2 Eleventh (c) of the Railway Labor Act, the plaintiffs have the right

to maintain their membership in the Firemen's union even while working as engineers. See Pennsylvania R. Co. v. Rychlik, 352 U.S. 480, 77 S.Ct. 421, 1 L. Ed.2d 480; Birkholz v. Dirks, 391 F.2d 289 (7th Cir. 1968).

In *Broady*, the employee sought to be represented not by a union with a collective bargaining contract with the railroad, but by a "rival union."[11] *Broady* is not determinative, for this Court did not construe Section 2 of the Railway Labor Act nor discuss the *Burley* case, and Section 2 Eleventh (c) of the Act was not brought to the Court's attention. Since the *Howard* and *Felter* cases had not yet been decided (supra, p. 970), one basis for the *Broady* decision was apparently the then prevalent notion that the federal courts had no jurisdiction to pass upon this kind of controversy; the same is true with respect to United Railroad Workers v. Atchison, Topeka & Santa Fe R. Co., 89 F.Supp. 666 (N.D.Ill.1950). It and *Butler* and Roberts v. Thompson, 107 F.Supp. 775 (E.D.Ark.1952), are likewise distinguishable because they are "rival union" cases. The Terminal and Engineers rely too on Switchmen's Union v. Louisville & Nashville R. Co., 130 F.Supp. 220 (W.D.Ky. 1955), but that opinion was based on the *Broady* and *United Railroad Workers* cases, neither of which is dispositive of the problem at hand.

*Edwards* did not involve the question whether employees are entitled to be represented by unions of their own choice in grievance matters. The principal question involved was an interpretation of Article 40 of the collective bargaining agreement between the Order of Railway Conductors & Brakemen and the Frisco, a question committed exclusively to the National Railroad Adjustment Board under Order of Railway Conductors v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 2d 318 and Slocum v. Delaware, Lacka-

---

11. The term "rival union" as used herein excludes those unions defined in Section 2 Eleventh (c) of the Railway Labor Act and qualified by the National Mediation Board.

wanna & Western R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795.

*Edwards* and *Brooks* and other cases on which the Terminal and Engineers rely [12] involve efforts of an employee to set aside an unfavorable grievance decision by challenging the procedures through which it was reached. Such efforts are frowned upon by the courts, for grievance procedures are supposed to be a substitute for litigation. The instant plaintiffs are not trying to overturn unfavorable grievance decisions, so that appellees' cases challenging grievance decisions are not controlling.

 It is unnecessary to decide whether the Railway Labor Act would entitle plaintiffs to designate a minority union seeking to dislodge Engineers' union. Our holding is simply that these plaintiffs, already members of the Firemen's union, can designate that union to represent them on the Terminal property and before the National Railroad Adjustment Board with reference to time claims and disciplinary investigations occurring while plaintiffs performed the services of locomotive engineers. To that extent, Articles 34 and 35 of the Terminal-Engineers contract of November 15, 1965, are invalid, but our judgment does not bar the Engineers' union from discussions on the Terminal property or before the National Railroad Adjustment Board when its interests are involved.

Finally, it should be noted that our holding does not encourage the formation of a new minority union. Cf. Pennsylvania R. Co. v. Rychlik, 352 U.S. 480, 77 S.Ct. 421, 1 L.Ed.2d 480. The Firemen's union was long established as the authorized bargaining representative of these plaintiffs and, as noted, is within the protection of Section 2 Eleventh (c) of the Railway Labor Act. These two unions have lived together and with railroad employers for a long time. To allow the Firemen's union to continue to represent its members in grievance matters would hardly change the balance of power and certainly would not inject a new union into the situation. Cf. Pennsylvania R. Co. v. Rychlik, 352 U.S. 480, 77 S.Ct. 421, 1 L.Ed.2d 480. Section 2 Eleventh (c) of the Act provides that an employee need belong only to one union. Logically, that union should have the right to represent him in grievance proceedings. If appellees were to prevail. Section 2 Eleventh (c) would be rendered a nullity as to these plaintiffs. The "membership" conferred by that Section would, for them, be a naked legal right unaccompanied by any of the ordinary material benefits of belonging to a union. Although our decision means that members of the Firemen's union may have their union represent them in grievances arising while they work as engineers, it also means that members of the Engineer's union have the right to be represented by that union in grievances while they work as firemen. Thus, our decision puts the two unions on a parity with each other and should not cause defections in either direction. In contrast, the effect of the November 15, 1965, agreement between Terminal and the Engineers would discourage membership in the Firemen's union by making it impossible for plaintiffs to be represented by that union in minor disputes.

The judgment is reversed and the cause is remanded with directions to enter judgment for plaintiffs in conformity with this opinion.

12. D'Elia v. New York, New Haven & Hartford R. Co., 230 F.Supp. 912 (D. Conn.1964), affirmed, 338 F.2d 701 (2d Cir. 1964), certiorari denied, 380 U.S. 978, 85 S.Ct. 1340, 14 L.Ed.2d 272; D'Amico v. Pennsylvania R. Co., 191 F. Supp. 160 (S.D.N.Y.1961), and *Brooks* concerned the alleged right to counsel during grievance proceedings on the railroad property and not the question whether employees have the statutory right to be represented in minor disputes by their union.