CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, a Corporation, Plaintiff-Appellant,

v.

BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN, a Voluntary Association; M. A. Ross, Individually and as Vice President; W. H. Wilkerson, Individually and as General Chairman; and Brotherhood of Locomotive Engineers, Defendants-Appellees.

No. 16744.

United States Court of Appeals Seventh Circuit.

July 2, 1968.

Rehearing Denied Aug. 5, 1968.

James P. Reedy, Anthony W. Summers, Thomas J. McDonnell, Chicago, Ill., for appellant.

Aaron S. Wolff, Alex Elson, Willard J. Lassers, Lee Leibik, Chicago, Ill., Harold C. Heiss, Heiss, Day & Bennett, Cleveland, Ohio, Elson, Lassers & Wolff, Chicago, Ill., for appellees.

Before CASTLE, Chief Judge, and KILEY and FAIRCHILD, Circuit Judges.

CASTLE, Chief Judge.

The plaintiff-appellant, Chicago, Milwaukee, St. Paul and Pacific Railroad Company, instituted this action in the District Court against the defendants-appellees, Brotherhood of Locomotive Firemen and Enginemen (BLF&E) and the Brotherhood's Vice President, M. A. Ross, and General Chairman, W. H. Wilkerson. Subsequently, a motion by the plaintiff railroad to join the Brotherhood of Locomotive Engineers (BLE) as a defendant [1] was allowed by the District

---

1. BLE although nominally designated a defendant supported the position taken by the railroad. On appeal it was permitted to file a brief *amicus curiae*.

Court. The railroad's complaint sought injunctive relief against a threatened strike or work stoppage by BLF&E. The court issued a temporary restraining order which also required the railroad to maintain the status quo, and following a combined hearing on the issuance of a preliminary injunction and upon the merits, made and entered findings of fact and conclusions of law upon which it based a judgment order dismissing the railroad's complaint. The railroad appealed.

The District Court found that the dispute out of which the litigation arose related to and was generated by an attempt by the railroad, at the request of BLE, to cancel a November 1, 1956, tri-partite agreement between the railroad, BLF&E and BLE governing the work assignment seniority of engineers and firemen at Three Forks, Montana, in the railroad's East Rocky Mountain Seniority District, and to re-establish an engineer's extra board at the Three Forks, Montana, point on its lines. The court concluded that inasmuch as the dispute involved a change in working conditions of employees represented by BLF&E it was a major dispute within the meaning of the Railway Labor Act and since the meditation services of the National Meditation Board, invoked by BFL&E, had been exhausted without resolving the dispute the BFL&E was free to resort to self-help, and the court was without jurisdiction to grant injunctive relief, such jurisdiction having been withdrawn by the Norris-LaGuardia Act, 29 U.S.C.A. § 104.

The sole contested issue on appeal is whether under and for the purposes of the Railway Labor Act (45 U.S.C.A. § 151 et seq.) the dispute here involved is a "major" dispute or a "minor" dispute. If it is the latter the dispute is a matter subject to submission to the National Railroad Adjustment Board for final and binding resolution—a form of compulsory arbitration—and the Norris-LaGuardia Act does not bar injunctive relief. Brotherhood of Railroad Trainmen v.

Chicago River & Ind. R. R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622.

The difference which distinguishes "minor" disputes, over which the National Railroad Adjustment Board has exclusive jurisdiction, from "major" disputes, the procedures for resolution of which are prescribed in § 6 of the Railway Labor Act, 45 U.S.C.A. § 156, is set forth in Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 722–724, 65 S.Ct. 1282, 1289–1290, 89 L.Ed. 1886. In Hilbert v. Pennsylvania R. R. Co., 7 Cir., 290 F.2d 881, 883, this Court characterized that difference as follows:

> " 'Major disputes' encompass those differences arising out of proposals for new contracts or of changes in existing contractual or legal obligations and relations. They arise where there is no collective bargaining agreement or where it is sought to change the terms of one. In such a case, the issue cannot be resolved by reference to an existing agreement.

> " 'Minor disputes', on the other hand, are grievances or other differences arising out of the application or interpretation of an existing collective bargaining agreement. The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation. See Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 722, 65 S.Ct. 1282, 89 L. Ed. 1886."

But, as recently observed in Southern Railway Company v. Brotherhood of Locomotive Firemen and Enginemen, D.C. Cir., 384 F.2d 323, 327:

> "This distinction, however, like many others in the law, is more easily stated than applied."

With the above quoted definitions and admonition in mind we turn to consideration of what the record shows with respect to the nature and background of the dispute here involved.

For many years prior to 1956, there existed on the Milwaukee railroad a seniority district known as the East Rocky Mountain Seniority District with headquarters at Three Forks, Montana. Railroad engineers on this seniority district are represented by BLE. Firemen on this district are represented by BLF&E. It has been the custom for employees hired as firemen, after training, education, experience and examination required by the railroad, to be promoted from firemen to engineers. After such promotion, however, employees serve as engineers only at such times as engineer openings are available, by virtue of seniority rules, and when no such openings are available, they serve as firemen. Upon such promotion, when the needs of the service required, firemen would serve first on the engineers' "Extra Board" and thereafter, when their seniority warranted, would receive permanent assignments as engineers. Engineers on the extra board had no permanent assignments but served when a regularly assigned engineer was unavailable for service due to sickness, accident, holiday, vacation, or other reasons.

Thus, for many years the interplay[2] between crafts of engineers and firemen, the promotion and demotion of engineers and firemen, their dual seniority rights, the ebb and flow or movement from the firemen's craft up to the engineers' craft, have been controlled by rules relating to extra boards.

In about 1956 work opportunities for engineers on the Three Forks engineers' extra board declined due to replacement of steam power by diesel power and other factors. The result was that engineers on the extra board had substantially less work opportunities. At the same time there were substantial employment opportunities for firemen who in general had less seniority than engineers. Upon re-

quest of BLE and after a vote authorizing such action had been taken of all firemen and engineers on the seniority district, BLE, BLF&E and the railroad entered into a tri-partite agreement which became effective November 1, 1956. The agreement provided, in general, that the engineers' extra board at Three Forks would be abolished and that the engineers on that extra board would work as firemen. When there was need for services of an engineer who formerly would have been taken from the engineers' extra board, the senior firemen available would be called for the position. The agreement thus established a variance from the normal rules governing the method of handling work assignments involving interplay and ebb and flow between the crafts.

The agreement contained the following provision:

"K. This agreement effective November 1, 1956, applies only on the East Rocky Mountain Seniority District, and is subject to cancellation on 30 days' written notice by any party signatory hereto."

On September 7, 1966, BLE served notice on the railroad to cancel the agreement of November 1, 1956, according to paragraph K thereof, and to restore the engineers' extra board at Three Forks, Montana, effective October 10, 1966. BLF&E protested cancellation of the agreement claiming that it could not be terminated except with the concurrence of all the parties thereto and that a referendum of all engineers and firemen at Three Forks was necessary in order to terminate the agreement. On October 4, 1966, BLF&E filed an application with the National Mediation Board for its mediation services in connection with the dispute over the proposed cancellation and restoration of the extra board. On

---

2. This interplay has been the subject of a number of decisions. See: General Committee of Ajustment of B.L.E. v. Missouri-K-T-R. Co., 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76; Hooser v. Baltimore & Ohio R. Co., 7 Cir., 279 F.2d 197; McElroy v. Terminal R. R. Ass'n of St. Louis, 7 Cir., 392 F.2d 966.

October 10, 1966, the BLF&E filed a complaint in the District Court seeking to enjoin the railroad from cancelling the agreement until all provisions of the Railway Labor Act had been exhausted.[3] The National Mediation Board terminated its services on November 7, 1967. On January 3, 1968, the railroad filed an ex parte submission of the dispute with the National Railroad Adjustment Board, and on January 8, 1968, advised that effective January 11, 1968, the engineers' extra list at Three Forks would be restored. On January 11, 1968, the BLF&E commenced picketing which had the effect of stopping certain portions of the railroad's operations and the complaint in the instant action was filed.

The findings of the District Court disclose that BLF&E's original protest to the railroad concerning the cancellation of the 1956 tri-partite agreement which created a variance in the method of handling work assignments, applicable solely at Three Forks, was made on the ground that termination of the agreement required the concurrence of all the parties thereto and a favorable referendum of all engineers and firemen at Three Forks. In view of the provision made in paragraph K of the agreement, this, of course, involved only a matter of contract interpretation—a classic example of a minor dispute.

On brief in this Court BLF&E assumes, arguendo, that the railroad did have the right to terminate the 1956 agreement and that it has been effectively cancelled, but asserts that such cancellation does not give the railroad "the right to impose new working conditions on the firemen" by re-establishing the engineers' extra board at Three Forks without making a new agreement or exhausting the major dispute provisions of the Railway Labor Act. It is on the basis of the premise that the railroad sought to impose "new working conditions" following termination of the 1956 agreement that BLF&E concludes that the dispute is a major dispute and, consequently

when thirty days elapsed after the National Mediation Board terminated its services, without the establishment of an emergency board, the railroad was free to re-establish the engineer's extra board at Three Forks, but BLF&E is authorized to resort to a strike without interference by injunction.

The only change in working conditions which could be effected by a termination of the 1956 tri-partite agreement was one whose occurrence was within the contractual contemplation of the parties. The agreement made specific provision for its termination. And it had merely withdrawn one isolated factor of working conditions, the making of the work assignments at Three Forks, from the method prevailing under the existing contractual relationships between the railroad and BLF&E, and BLE, respectively.

In our opinion a dispute as to whether a termination of the 1956 agreement has the effect of restoring the engineers' extra board at Three Forks, and whether such a restoration constitutes a "new" working condition, presents only issues which are to be resolved by reference to and interpretation of the related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements. This is particularly true where a jurisdictional dispute over work assignments is involved. The rationale and teaching of Transportation-Communication Employees Union v. Union Pacific Railroad Co., 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264, is pertinent in this connection. It was there pointed out (385 U.S. pp. 160–161, 87 S.Ct. p. 371):

"A collective bargaining agreement is not an ordinary contract for the purchase of goods and services, nor is it governed by the same old common-law concepts, which control such private contracts. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 550, 84 S.Ct. 909, 914, 11 L.Ed.2d 898; cf. Steele v. Louisville & N. R. Co., 323

3. BLF&E's October 10, 1966, action was dismissed without prejudice on January 2, 1968.

U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173. " * * * [I]t is a generalized code to govern a myriad of cases which the draftsman cannot wholly anticipate. * * * The collective agreement covers the whole employment relationship. It calls into being a new common law—the common law of a particular industry or of a particular plant." United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 578–579, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409. In order to interpret such an agreement it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements. This is particularly true when the agreement is resorted to for the purpose of settling a jurisdictional dispute over work assignments."

We therefore conclude that the dispute here involved is a minor dispute.

Accordingly, we hold that the District Court erred in concluding that the Norris-LaGuardia Act, 29 U.S.C.A. § 104, deprived it of jurisdiction to entertain the railroad's complaint for injunctive relief.

■ A motion of the defendants-appellees to strike a portion of the reply brief of plaintiff-appellant as not being addressed to an issue within the scope of the appeal, nor directed to matter in reply to questions discussed in appellees' brief, was taken with the case. Inasmuch as our disposition of the appeal is in no manner grounded on a resolution of that issue we decline to extend this opinion to encompass the discussion an expository ruling on the motion would necessarily entail. The basis of our opinion makes the matter of no import. We treat it as being moot.

The judgment order of the District Court dismissing the plaintiff-appellant's complaint is reversed, and the cause is remanded to the District Court for further proceedings consistent herewith.

Reversed and remanded.